### The Evan L. Reed Manufacturing Company, Appellee, v. Charles P. Wurts, Appellant.

### Gen. No. 18,764.

1. INSURANCE, § 67*—*liability of agent for breach of contract to procure insurance.* If an agent neglects to procure insurance or does not follow instructions when obligated to do so, or if the policy obtained is void or materially defective through the agent's fault, or if the principal suffers damage by reason of any mistake

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

or act of omission or commission of the agent which constitutes a breach of duty to his principal, he is liable to his principal for any loss he may have sustained thereby.

2. INSURANCE, § 67*—*when agent liable for misfeasance in procuring insurance.* Where a person voluntarily, without consideration and without expectation of remuneration or reward, agrees to procure insurance, and actually takes steps in the matter, he is responsible for misfeasance, and if he proceeds to effect a policy and is so negligent and unskilled that no benefit is derived therefrom, he is liable although he was not bound to undertake the performance.

3. INSURANCE, § 67*—*what constitutes no defense in suit against agent for failure to procure insurance.* Want of authority of foreign insurance company to transact business in this State constitutes no defense in a suit against an insurance broker for damages resulting from failure to procure fire insurance in such company, where the evidence shows that plaintiff had no knowledge that such company had no such authority.

4. PLEADING, § 431*—*when averment in declaration need not be proved.* In an action against an insurance broker for failure to procure insurance where the declaration averred generally that defendant received a reward for procuring insurance, *held* that proof of such averment was not essential to recovery because it was not specifically denied by defendant in his affidavit of merits and also because the averment was not relevant and might be treated as surplusage.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed June 24, 1914. *Certiorari* denied by Supreme Court (making opinion final).

J. H. WESTOVER, for appellant.

CARNAHAN, ELSDON & SLUSSER, for appellee; FREDERICK A. BROWN, of counsel.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is a suit brought in the Municipal Court by The Evan L. Reed Mfg. Co., a corporation, against Charles P. Wurts to recover damages occasioned by the alleged failure of the defendant to procure cer-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tain fire insurance policies covering property belonging to the plaintiff. A trial by jury resulted in a verdict and judgment against the defendant for $3,666.68, to reverse which judgment he prosecutes this appeal.

Plaintiff's statement of claim avers that on or about November 1, 1909, the defendant, who was then and there an insurance broker doing business in the city of Chicago, solicited from plaintiff the placing of the plaintiff's fire insurance, and that subsequently, on December 1, 1909, the defendant undertook and agreed and promised to procure for the plaintiff a $1,500 fire insurance policy to be written by the Minnesota Fire Insurance Company of Chatfield, Minnesota, a $2,500 fire insurance policy in the London Lloyds, to be effective January 1, 1910, and a $1,000 fire insurance policy in the London Lloyds, to be effective January 20, 1910, the procuring of which policies was in line with the defendant's general business of procuring fire insurance, out of which he received a reward, said reward being a certain percentage of the premium paid by the insured; but the said defendant carelessly and negligently failed to procure the policy in the Minnesota Fire Insurance Company aforesaid, and failed and neglected to procure valid and enforcible policies in the London Lloyds aforesaid; that he did procure a policy in the London Lloyds, said policy being No. 20,528, for $2,500, to run for one year from January 3, 1910, purporting to cover property belonging to the plaintiff at Sterling, Illinois, which said policy was received by the plaintiff on or about January 13, 1910, and which policy contained a clause providing that the said policy should not be valid unless there was in addition to the said insurance a valid insurance policy in the Minnesota Fire Insurance Company for $1,500; that plaintiff relied upon defendant to procure valid insurance in the said company and the said London Lloyds and that plaintiff had no notice that the policy issued by the said London Lloyds contained the said clause, nor was the attention of plaintiff

called to the said clause until after the happening of the loss hereinafter mentioned; that by reason of the defendant's failure to procure the said policy in the Minnesota Fire Insurance Company, the said policy in the London Lloyds was void and of no effect; that on January 15, 1910, the factory of the plaintiff at Rock Falls, Illinois, the building and contents of which was to have been insured by the policies aforesaid, was damaged and destroyed by fire, and plaintiff was unable between the date of the receipt of the London Lloyds policy from the said defendant and the date of the said fire to procure insurance protection, wherefore, by reason of the failure of the defendant to properly carry out his agreement and undertaking, to procure insurance for the plaintiff, or to notify the plaintiff of his failures so to do, plaintiff was obliged to and did sustain a loss which would otherwise have been covered by the two policies of insurance.

On August 10, 1909, the defendant, who, as he testified, was engaged in the business of placing insurance for clients, addressed to the plaintiff a communication as follows:

"If you are at all dissatisfied with the fire insurance rate which has been assessed against your property by the Insurance Trust, you may perhaps be glad to know that there is an opportunity for securing the best insurance possible at materially lower rates

This insurance involves absolutely no contingent liability as in the case of Mutual companies and inter-insurance associations, but is indemnity which has been sold all over the world for over a hundred years. If you would like to have a proposition with reference to the amount of insurance which can be handled and the best rate obtainable, I shall be glad to hear from you with a copy of your form and a quotation of the rate you are now paying."

Presumably in reply to this communication plaintiff, on November 15, 1909, sent to the defendant an existing policy covering property desired to be insured by plaintiff, and on November 16, 1909, the defendant wrote plaintiff as follows:

"I have your favor of the 15th enclosing Illinois National policy for $2,000 to show form and note that this insurance was written up at a rate of 2.625.

On investigation I find that your present tariff rate is 3.48, but I am prepared to quote you a rate of 2.625 for $1,000 in the Federal Lloyds and $5,000 in London Lloyds.

If this proposition appeals to you, I shall be glad to have your prompt instructions."

On November 29, 1909, plaintiff wrote the defendant as follows:

"You may write us $1,000 fire insurance in Federal Lloyds and $4,000 fire insurance in London Lloyds at $26.25 per M, as per form of Illinois National Policy sent to you.

$2,000 to commence Jan. 1, 1910,
2,000 to commence Jan. 3, 1910,
500 to commence Jan. 20, 1910,
500 to commence Feb. 27, 1910."

In reply thereto the defendant, on December 1, 1909, wrote plaintiff as follows:

"I have your instructions to place $1,000 in the Federal Lloyds and $4,000 in London Lloyds at 2.625, but I have to report that since I wrote you I have ascertained that some of the underwriters of the Federal Lloyds have withdrawn so that I can no longer conscientiously recommend policies therein.

"I have, however, succeeded in getting the general agent of the Minnesota Fire Insurance Co. of Chatfield, Minn., which is a recently organized joint stock company, with a paid in capital of $100,000 and a paid in cash surplus of $50,000 to recommend to his company the issuance of its policy for $1,500 effective January 1st and you will probably receive from this company early in December a policy for $1,500. As soon as this policy reaches you, please advise me and in the meanwhile I am placing the balance of your requirements in London Lloyds.

I propose giving you $2,500 in London Lloyds effective January 1st and $1,000 effective January 20th.

I am obliged to divide the insurance in this way because it will not be possible to secure a London Lloyds policy for such a small amount as $500 so that I trust that this will be satisfactory to your good selves.

Awaiting your reply, I am,

Yours very truly,''

The evidence tends to show that thereafter plaintiff wrote the defendant that it woud accept a policy in the Minnesota Fire Insurance Company, provided it was a good company. Whether or not the defendant thereafter informed plaintiff of the standing and responsibility of the Minnesota Fire Insurance Company does not clearly appear, but it may be fairly inferred from the evidence that the defendant did so inform plaintiff and that the latter on December 13, 1909, expressed its willingness to accept a policy in that company, and also then directed the defendant to change the date of maturity of some of the policies.

The defendant left the city of Chicago for Honolulu on December 9, 1909, and did not return until January 15 or 16, 1910.

On January 12, 1910, there was addressed to the plaintiff from the office of the defendant a communication as follows:

"Herewith London Lloyds policy # 2528 for $2,500.00 and running one year from the 3rd instant. I also enclose policy No. 20529 for $1,000 for one year from February 27, both of which I trust you will find correct and satisfactory. Both of these policies were issued before receipt of your letter asking for change of date, but this matter has been properly attended to by an endorsement on the policies.

The premiums on these policies are $26.25 on No. 2529 and $65.63 on # 20528 making a total of $91.88 for which kindly let me have your check as promptly as possible, as this business is as usual, c. o. d.''

This communication, together with the policies mentioned therein, were received by the plaintiff on January 13th or 14th, 1910, and on January 15, 1910, the property of the plaintiff was destroyed by fire. Plain-

tiff never received a policy of insurance from the Minnesota Fire Insurance Company and no such policy appears to have been issued to plaintiff by said company. The evidence tends to show that plaintiff had no actual notice or knowledge that the policies of insurance issued to it by the London Lloyds contained a warranty clause, as follows: ''Warranted same gross rate, terms and conditions and to follow the Minnesota Fire Insurance Company which has $1500 on the identical subject matter and risk and in the same proportion.'' It is conceded that this warranty clause is to be construed as providing, in substance, that the London Lloyds policies should not be operative and valid unless in addition thereto the insured carried a valid policy of insurance in the Minnesota Fire Insurance Company for $1,500.

It is said there is a material variance in two particulars between the alleged contract set out in plaintiff's statement of claim and the contract as proved. First, that it is averred in the statement of claim that defendant on December 1, 1909, undertook, agreed and promised to procure for the plaintiff a policy of fire insurance for $1,500, to be written by the Minnesota Fire Insurance Company and a like policy of insurance in the London Lloyds, whereas the only proof offered in support of such averment is the letter of defendant to plaintiff dated December 1, 1909, wherein defendant merely stated that he had succeeded in getting the general agent of the Minnesota Fire Insurance Company to recommend to said company the issuance of its policy for $1,500 effective January 1, 1910, which policy plaintiff would probably receive from said company early in December. Second, that it is averred in the statement of claim that for procuring said policies defendant was to receive a reward, said reward being a certain percentage of the premiums paid by the insured, whereas there is no evidence tending to show that defendant had or was to have from the premiums paid by the plaintiff or from any other source, any reward for procuring said policies.

The letter of December 1, 1909, is not the only evidence in the record, if additional evidence is necessary, tending to show an undertaking and promise by the defendant to procure the insurance in question. The prior correspondence between the parties shows an offer by defendant to procure such insurance as plaintiff might desire and an acceptance of such offer by plaintiff, and, further, that plaintiff sent to the defendant a form descriptive of the property to be insured, and advised the defendant of the several dates when such insurance should become effective.

Furthermore, in procuring policies from the London Lloyds, containing the warranty clause heretofore mentioned, the purpose and effect of which he well knew, defendant was bound to see to it that said policies were not rendered invalid by his failure or neglect to procure a policy of insurance in the Minnesota Fire Insurance Company in compliance with said warranty. In his letter of December 1, 1909, defendant assumes that the required policy in the Minnesota Fire Insurance Company will be issued and received by the plaintiff, and merely requests to be advised as soon as said policy shall be received. The further statement by defendant that he was placing the balance of plaintiff's requirements in the London Lloyds clearly implies that he had then placed insurance in or procured a policy to be issued by the Minnesota Fire Insurance Company.

The principles of law generally applicable to actions of the character here involved are not seriously controverted by the defendant.

If an agent neglects to procure insurance or does not follow instructions when obligated so to do, or if the policy obtained is void or materially defective through the agent's fault, or if the principal suffers damage by reason of any mistake or act of omission or commission of the agent which constitutes a breach of duty to his principal, he is liable to his principal for any loss he

may have sustained thereby. 1 Joyce on Insurance
sec. 678; Kerr on Insurance, sec. 120; 1 Cooley's
Briefs on the Law of Insurance, p. 338.

The statement of claim filed by the plaintiff does not
aver that defendant was to receive a reward for pro-
curing the policies of insurance in question, but avers
generally that the procuring of said policies "was in
line with the defendant's general business of procur-
ing fire insurance, out of which he received a reward,
said reward being a certain percentage of the premium
paid by the insured." Proof of this averment was not
essential to plaintiff's right of recovery, because it was
not specifically denied by defendant in his affidavit of
merits, and also because the averment as made was
not relevant and might, therefore, be properly treated
as surplusage.

"If a person voluntarily, without considera-
tion, and without expectation of remuneration or re-
ward, agrees to procure an insurance, and actually
takes steps in the matter, he is responsible for misfeas-
ance, and if he proceeds to effect a policy, and is so
negligent and unskilled that no benefit is derived
therefrom, he is liable, although he was not bound to
undertake the performance." 1 Joyce on Insurance,
sec. 680. To the same effect see Hughes on Insurance,
p. 94.

It is next urged that as the Minnesota Fire Insur-
ance Company was not admitted to transact business
in this State, plaintiff could not lawfully secure or con-
tract with the defendant to secure a policy of insur-
ance in said Company; that such contract was in viola-
tion of the law prohibiting insurance agents from tak-
ing risks or transacting the business of fire insurance
with companies not authorized to do business in this
State. The evidence tends to show that plaintiff had
no knowledge that said company was not authorized
to transact business in this State, and in the absence
of such knowledge plaintiff was justified in presum-
ing that it was authorized to transact business in this
State. If a policy of insurance had in fact been is-
sued to plaintiff by said company, it could not have

avoided its liability thereon by reason of the fact that it had failed to comply with the law relating to foreign insurance companies. *Watertown Fire Ins. Co. v. Rust,* 141 Ill. 85.

Defendant had actual knowledge that the Minnesota Fire Insurance Company was not authorized to do business in this State, and yet he procured the policies in the London Lloyds, conditioned upon a warranty therein that a policy for $1,500 in the Minnesota Fire Insurance Company should be issued to plaintiff. Under such circumstances the defendant cannot be permitted to avoid liability upon the ground that the Minnesota Fire Insurance Company was not authorized to transact business in this State.

It is insisted that the trial court improperly admitted in evidence two letters, designated in the record as "Exhibit 7" and "Exhibit 8" respectively, written by the defendant to the plaintiff on January 27th and January 29th, 1910. "Exhibit 8" was admitted without objection and "Exhibit 7" was not harmful to defendant.

Other objections urged to the action of the court in rejecting certain evidence offered by defendant are without merit.

The fourth instruction given to the jury is not free from criticism, but the infirmity in the instruction does not demand a reversal of the judgment. The third and fifth instructions are substantially accurate statements of the law predicated upon the evidence in the record.

There is no reversible error in the record and the judgment is affirmed.

*Judgment affirmed.*