Mosteiko v. Natl. Inter Insurers Corp. of Chicago, 229 Ill. App. 153.

was influenced by such statements of counsel made to the jury in the argument of the case. It is sufficient to say that no objections were made to the court at the time such statements were made and that any such statements that may have been made upon the trial of the case should have been preserved by bill of exceptions and presented to this court in that manner. No such statements are preserved in the bill of exceptions and no objections thereto are preserved by bill of exceptions, and it is elementary that assignment cannot be made upon error except as shown by the bill of exceptions. The bill of exceptions is not to be amplified or enlarged by affidavits presented on a motion for a new trial.

The judgment of the lower court is affirmed.

*Affirmed.*

## Louis Mosteiko, Appellant, v. National Inter Insurers Corporation of Chicago, Illinois, Appellee.

1. BROKERS—*instruction as to liability for negligence.* It is proper, in an action against an alleged insurance broker for damages suffered by the principal because of the alleged negligence of the broker in failing to secure insurance for the principal, to instruct the jury that the broker is not liable, if they believe from all the evidence that the broker was not in any way negligent as charged in the declaration but acted with reasonable diligence in the matter of procuring an insurance policy for his principal.

2. INSURANCE—*application for reciprocal insurance as constituting agreement of brokerage.* An application for insurance under the reciprocal or interinsurance plan which designates a named corporation as the subscriber's attorney in fact, giving to it general powers to exchange such insurance for the subscriber and to act for him in all matters in any way connected therewith, and also making the attorney in fact the machinery through which all such reciprocal insurers function in the exchange of insurance and all matters arising therefrom with powers coextensive with those of the board of directors of an old-line insurance company, makes such attorney an insurance broker to procure insurance of the kind

154    APPELLATE COURTS OF ILLINOIS.

Mosteiko v. Natl. Inter Insurers Corp. of Chicago, 229 Ill. App. 153.

and quantity desired by the subscriber, not only by exchange with other subscribers but by securing it from other insurance companies, where the attorney is empowered to place insurance for the subscriber "directly in any insurance company," and such attorney is liable as a broker for negligence in failing to procure such insurance as the subscriber ordered and paid for, even though such attorney did not exercise its power to procure insurance from other companies except in the case of reinsurance.

3. INSURANCE—*when brokerage agreement embodied in application for reciprocal insurance not dependent upon approval to fix obligations.* The failure of an insurance broker, appointed under an application for reciprocal insurance and power of attorney, to approve the application as provided by a clause of the application before it could become valid does not affect the broker's liability for negligence in failing to procure insurance for his principal according to the agreement where such approval clause applies only to applications for reciprocal insurance in the specific "exchange" of which such broker is the representative and not its powers under the general power of attorney to procure insurance for the principal from other insurance carriers.

4. INSURANCE—*when existence of relationship and duties of broker is a question of law.* It is a question of law for the court to determine whether an agreement for the placing of insurance for the principal creates a brokerage with the duty to use diligence in procuring such insurance for the principal where the facts are undisputed that the principal was solicited to place the insurance in question with defendant and terms and conditions are contained in a written agreement which makes defendant a broker to procure such insurance from any insurance company, and it is error in an action against such broker for damages for negligence in failing to secure the insurance to instruct the jury that if they find from the evidence that defendant did not agree to act as a broker, he owed no duty to plaintiff except not to wilfully injure or damage him.

Appeal by plaintiff from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding. Heard in this court at the October term, 1922. Reversed and remanded. Opinion filed January 17, 1923. Opinion modified, order of reversal and remandment adhered to and rehearing denied April 3, 1923.

GRAHAM & DYSERT and CRAYTON & BOYLE, for appellant.

THOMAS H. MURRAY and GUNN, PINWELL & LINDLEY, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an action on the case begun in the circuit court of Vermilion county by the plaintiff, Louis Mosteiko, against the National Inter Insurers Corporation of Chicago, Illinois, to recover damages occasioned by the defendant's failure to procure liability and collision automobile insurance for the plaintiff upon his automobile within a reasonable time after it had been authorized by written power of attorney to do so, and had received the plaintiff's application and check for $130 in full payment of its charges.

Plaintiff's declaration in the first count charged that the defendant was engaged in the automobile insurance brokerage business in Chicago, and on August 24, 1921, through its agent, solicited from the plaintiff the placing of liability and collision insurance on his automobile, and charged negligence on the part of the defendant in failing to do so; that on September 10, 1921, being the sixteenth day after signing power of attorney, plaintiff's car, worth $2,000 was destroyed by an accident and he was compelled to pay $2,000 in settlement of a judgment procured against him by J. H. McLain for property damage to his automobile and for personal injuries, all resulting from said accident.

The second count charged that the defendant was negligent in failing to procure said insurance within a reasonable time after August 24, 1921, the date on which it received said power of attorney and check.

The third count charged that the defendant neglected to procure said insurance within a reasonable time after August 24, 1921, or to notify the plaintiff of such inability within a reasonable time.

There was a fourth amended count which made the

same charges as in the third count of the declaration and sets forth a power of attorney, which in substance is as follows:

"National Auto Underwriters of
Chicago, Illinois.
Application Blank and Power of Attorney.

"The undersigned, hereby designated a subscriber at National Auto Underwriters, desiring to exchange insurance and indemnity with other subscriber on the Reciprocal or Inter-Insurance plan; for that purpose appoints the National Inter-Insurers Corporation of Chicago, Illinois, an Illinois corporation (as now or hereafter constituted), with offices at Chicago, Illinois, as Attorney in Fact for me and in my name to so exchange such insurance and / or indemnity under the following terms and conditions.

"Said Attorney is hereby authorized to make, modify and cancel contracts containing such terms and agreements as my said Attorney shall deem necessary to effect such insurance or exchange of indemnity, to effect re-insurance of such contracts, and in my said Attorney's sole discretion to place insurance for me directly in any insurance corporation and to cancel any such policies of insurance or re-insurance; to subscribe such contracts of insurance and / or indemnity for me; provided, however, that the amount of indemnity exchanged for me shall in no case exceed the amount hereinafter subscribed for me; to collect and receipt for all monies due, to waive or receive all notices or proofs of loss, to adjust and settle all losses and claims under contracts, to perform or waive all agreements or stipulations of any such contracts, to accept service of process, and to appear for me in any litigation arising hereunder and to prosecute, defend or compromise the same and to perform every act necessary to carry out the purposes of such contracts, with full power of substitution and revocation by said Attorney.

"Said Attorney is hereby specifically authorized to do all things necessary to effect compliance under the laws of any State with respect to the exchange

of insurance and / or indemnity contracts herein provided for.

"Said Attorney shall have no power to make me jointly liable with any other subscribers and every liability of whatever nature which said Attorney is authorized to incur for me is to be in every case several and not joint.

"As compensation for his services for conducting the exchange of insurance and / or indemnity and the placing of insurance and re-insurance as herein authorized, my said Attorney is hereby authorized to deduct and retain and appropriate to its own use the membership and / or transfer fee or fees paid by me and other subscribers at said exchange. Membership fee or fees shall be as follows: if paid on annual plan, Fire and Theft, $8.00; Collision, $8.00; Liability and Property Damage, $8.00; if paid on semi-annual plan, Fire and Theft, $10.00; Collision, $10.00; Liability and Property Damage, $10.00; if paid on quarterly plan, Fire and Theft, $12.00; Liability and Property Damage, $12.00; Collision, $12.00. Transfer fee or fees shall be 50 cents for each class of coverage.

"A committee consisting of three or more subscribers at the exchange shall be selected as an advisory committee. The first committee, however, to be chosen by the Attorney in Fact to serve until the annual meeting of the subscribers. There shall be an annual meeting of the subscribers at the exchange on the first Tuesday of January of each year held at the office of the Attorney in Fact for the purpose of electing three or more members to serve as an advisory committee, who when elected shall serve until the next annual meeting of the subscribers. At each meeting each subscriber may be present, and vote in person, or he may appoint in writing the Attorney in Fact or any other subscriber as his proxy, to represent him at such meeting. In the event the subscriber should not appear at such annual meeting or shall not appoint any other subscriber as his proxy, then my Attorney in Fact is hereby authorized to represent me as my proxy at such annual meeting. All proxies must be filed in writing with the Attorney in Fact at

least ten days before such annual meeting, otherwise they shall not be recognized. In the event of a vacancy in said committee, such vacancy shall be filled by the remaining members of the said committee and the member of the advisory committee. The funds of the subscribers shall be deposited in some bank or invested in securities approved by a majority of the advisory committee. Disbursements of funds of the subscribers shall be by check signed by my Attorney and countersigned by a member of the advisory committee, or by a bank or trust company approved by a majority of the said committee.

"My Attorney in Fact shall make quarterly, semiannual or annual assessments for license fees, taxes of any kind, insurance or re-insurance premiums, court costs, or attorneys' fees, the cost of maintaining a claim department for the investigation and settlement or other disposition of claims, the cost of paying, settling, compromising, litigating or otherwise disposing of claims and collection of assessments upon the subscribers.

"No less than ten days before the date on which each payment of assessment or additional installment thereof is due and payable at the home office of the exchange my Attorney in Fact agrees to notify me in writing (notice mailed, postage prepaid to my place of address as shown on this or subsequent application and power of attorney shall be sufficient notice) of the amount due the exchange under the terms of this or subsequent applications and the policy or policies of insurance and / or indemnity issued hereunder. In the event of my failure to make any payment or to pay any additional installments levied against me under the terms of this or subsequent applications and policy or policies of insurance and / or indemnity issued hereunder before 12 o'clock noon of the due date thereof, the liability of the exchange under this or subsequent applications and power of attorney and the policy or policies of insurance and / or indemnity issued pursuant hereto shall cease and remain so until the amount of such payment or additional installment has been paid at the home office of the exchange

and the policy or policies of insurance reinstated by the Attorney in Fact.

"The exchange shall have no liability under this application until it has been approved by the Attorney in Fact and policy of insurance and / or indemnity issued hereunder. Any policy of insurance and / or indemnity issued under this agreement and power of attorney and application for insurance and / or indemnity shall be a part hereof and shall constitute the contract in each case between the subscriber and the exchange.

\*     \*     \*     \*     \*

"This Power of Attorney shall apply to any and all other protection herein applied for me in the same manner as if written in this original schedule.

"This Power of Attorney is strictly limited to the use and purposes herein expressed and to no other purposes and may be terminated at any time by the undersigned or by the Attorney by either giving to the other ten days' notice in writing.

"The undersigned subscribes to the foregoing agreement and warrants the following warranties to be true and hereby makes application for the kind of insurance and / or indemnity indicated below."

Then follows description of appellant's car, amount and kind of indemnity applied for and amount of check ($130) forwarded.

"This application not valid until approved by the Attorney in Fact and a policy issued.

Signed this 24th day of Aug. 1921.

          (Signed)     Louis Mosteiko, Subscriber.
Approved this................
day of.................19....

                              E. B. Quartier."

This action is based upon defendant's negligence in failing to act under its contract of brokerage or agency.

There was a demurrer to plaintiff's declaration in the court below which was heard and overruled, and later the defendant pleaded the general issue. The cause was submitted to a jury. There was a verdict

for the defendant and judgment upon the verdict and the plaintiff brings the cause to this court by appeal.

It was shown on the trial, by the testimony on both sides, uncontradicted, that plaintiff signed the power of attorney, application and instrument on the 24th day of August, 1921, at the solicitation of one E. B. Quartier, who was acting as an agent for the defendant in soliciting subscribers to sign such instruments, for the defendant, and who received commissions from defendant in all cases where he procured such instruments to be signed, and a policy of insurance was issued upon acceptance of application by defendant. Plaintiff gave his check to Quartier on August 24, 1921, for $130 being the full amount of premium, assessment and all charges, including fees, payable to the National Auto Underwriters, which, with the instrument·or power of attorney, was forwarded to the defendant and received by it in Chicago on August 25, 1921. Plaintiff suffered a loss in an automobile collision on September 10, 1921,—defendant had taken no action upon the instrument, nor procured a policy of insurance, prior to the collision and damage upon September 10, and at about the same time, on September 12, plaintiff received back his check. Defendant's president testified that the defendant, ''was not engaged, except as attorney in fact, in the business of obtaining insurance in any stock company, and then only re-insurance, where the loss was too great. Its ordinary business was procuring insurance for these subscribers in the National Auto Underwriters, which consist of the individuals or corporations or partnerships who own automobiles and want to exchange insurance among themselves. It was not engaged in procuring insurance for these subscribers for any other association than the National Auto Underwriters, and that is what is known as '*insurance exchange,*' authorized under the reciprocal insurance laws of the· State of Illinois.''

On the trial there was testimony offered by both plaintiff and defendant touching the defendant's negligence and due care, respectively, in acting upon this instrument or power of attorney.

Plaintiff contends that by the solicitation of his subscription and the receipt of the power of attorney and the check, the defendant became a broker for or the agent of the plaintiff, to procure insurance in his behalf, and thereby it became the duty of the defendant to use the due care and prudence, in plaintiff's behalf, that such relationship imposed upon the defendant.

Appellee, the defendant, contends that the application and power of attorney shows that it is an application to exchange insurance with the subscribers at the National Auto Underwriters; that the same instrument authorizes the appellee as attorney in fact to exchange such insurance and to do any and all things which may be necessary to effect that purpose; that, therefore, the appellee corporation was the active head of the insurance referred to and was the sole machinery by and through which such association operated. Appellee further contends that it did not agree to act as attorney in fact for plaintiff; never accepted or approved the power of attorney, and "in fact did not act and did nothing which would lead appellant (plaintiff) to believe it was acting." In other words, appellee, being the machinery of this insurance company, if it is such, assumes that it is the insurance company itself, and claims all of the privileges and protection that the law throws around insurance companies. This must be determined by the law governing reciprocal insurance, the instrument in evidence, and the conduct of the parties. No question is raised by either party in this case as to the constitutionality of any of the provisions of the act in regard to reciprocal or interinsurance passed and in force July 1, 1921, nor is any question raised as to the public

policy of any of the provisions of said contract, instrument or power of attorney.

The plaintiff assigns error upon instructions given to the jury on behalf of the defendant. Instruction No. 6 informed the jury that there can be no liability in this case "if you believe from the evidence that the defendant was not in any way negligent, as charged in plaintiff's declaration, but acted with reasonable diligence in the matter of procuring an insurance policy for the plaintiff." This instruction, it is conceded, stated the law as applicable to this case. Then the court modified and gave defendant's instruction No. 10 as follows: *"You are further instructed that if you find from all the evidence that the defendant did not undertake to act as an insurance broker, then you are instructed that the defendant owes to the plaintiff no duty except not to wilfully injure or damage him."*

Appellant assigns error upon the giving of the tenth modified instruction on behalf of defendant.

There were no disputed facts in evidence as to what defendant did or did not undertake to do. The facts and the instrument were all before the court, and it should have been determined by the court whether such facts and the instrument constituted appellee a broker or agent in behalf of appellant. If such facts and the instrument rendered appellant either a broker or agent for appellant, then the instruction was erroneous and the verdict should be set aside. Under the contract in this case, and under the act of 1921 providing for reciprocal insurance, the "attorney in fact" is not an insurance company, and has no interest, profits, rights or privileges in the policies issued or in the subject of insurance, except the compensation for its services for conducting the exchange of insurance, as provided in the instrument and power of attorney. The National Auto Underwriters, as set out in the instrument, and the added cognomen "of

Chicago'' as added at the head of the instrument, is not a legal entity of any kind, neither the name of any person, copartnership or corporation, but is the name of a ''spot'' or ''place'' designated, at the wish of the attorney in fact, as the ''spot'' or ''place'' where subscribers secured by appellee (in this case) may exchange their insurance—mutually insure each other —and a check payable to The National Auto Underwriters means that it is payable, so far as this record shows, to a ''spot,'' ''place,'' ''office'' or ''exchange'' and is payable for the benefit of the body of subscribers, and may include defendant's fees and compensation. The body or entity constituting the insurance company, such as it is, consists of the collective body of subscribers, who, in a manner, mutually insure each other, although there is a provision prohibiting joint liability, yet the advance charges and premiums are required to be sufficient to take care of and pay all ordinary losses. It is not in any sense an improper form of insurance, so far as shown, but we are merely defining the relationship. The attorney in fact, being selected by each subscriber, in the said instrument, which is signed by all of the subscribers, becomes the attorney in fact for the entire association, and, as counsel for appellee say, *''the whole machinery, through which the association functions.''* The attorney in fact, as an agent or employee, or in the capacity of broker, issues the policies for the association, holds the deposit fund and controls the same. The attorney in fact effects settlement of all losses, with the aid of an *'' advisory committee''* of three subscribers, in the first instance to be appointed by the attorney in fact, and thereafter to be appointed by the attorney in fact, unless a majority of all of the subscribers, at the annual meeting, journey to the ''spot'' or ''place'' where the exchange is held and elect others. The attorney in fact has full power to bring and control all suits for losses brought by subscribers,

and to compromise or release such claims and at the same time, with an "advisory committee," the attorney in fact has full control of the defense of all such actions. In effect, under the law, and under the instrument in evidence, the attorney in fact performs all the functions, ministerial and discretionary, usually performed by the president and board of directors of an old-line insurance company, with the power to compromise and release all claims and rights of its patrons, but, in word and language, as a clerk, agent, attorney or general manager of the collective body of the association, for each individual member of which he or it is also the attorney in fact.

Turning to the instrument, we find that the attorney in fact in this case was authorized by the appellant in his individual behalf: "To make, modify and cancel contracts" of insurance; and to effect reinsurance of all contracts made and—"in my said attorney's sole discretion to place insurance for me (plaintiff) directly in any insurance corporation and to cancel any such policies * * *; to subscribe such contracts of insurance, or indemnity, to sue; * * * to collect and receipt for all monies due, to waive or receive all notices or proofs of loss, to adjust and settle all losses and claims under contracts; to perform or waive all agreements or stipulations of any such contracts, to accept service of process, and to appear for me in any litigation arising hereunder and to prosecute, defend or compromise the same and to perform every act necessary to carry out the purposes of such contracts, with full power of substitution and revocation by said Attorney."

This is the power granted to the defendant "attorney in fact," by the plaintiff, and, likewise, a similar power is granted to defendant by each subscriber, and by the collective body or association of subscribers, called the "exchange," except "the advisory committee" of three subscribers mentioned, *supra*. Veri-

tably the "attorney in fact" acts for each and acts for all and its powers are ample. It had power to place insurance for plaintiff in this "exchange" or with insurance corporation, though the president of the defendant testified that it never exercised the latter power except in case of reinsurance. Its position, under the law and under the agreement, was a position of neutrality, of no interest to itself, of fairness to each and every subscriber. In this "exchange" the "attorney in fact" as an agent or a broker, or in some capacity, had a monopoly in handling for others, with no title in itself, everything on this market "for sale" and of all orders "for purchase." Defendant would restrict the construction of this instrument to *"an application for insurance."* It is that and more. It has a double aspect. It is a power of attorney, granting to defendant full and complete power to act for the plaintiff in every matter pertaining to the insurance of plaintiff's property, and indemnity to plaintiff for loss. Nothing is left in that regard for plaintiff to do. It is also an application for insurance in this "exchange," made through defendant, in some capacity, for insurance or indemnity, upon or by reason of plaintiff owning an automobile. The instrument comprehends two diverse, complete and distinct subject-matters and must be construed in its relation to each. Defendant, appellee, contends that it never agreed or consented to accept the power of attorney made by plaintiff. Appellee means, thereby, to contend that it, acting for the body of the "exchange" or association, never agreed or consented to accept that part of the instrument, which comprehended an application for insurance or indemnity in the "exchange," without investigation, and it never did so accept; neither is defendant in this suit charged with accepting said application for insurance. As to the "power of attorney" in defendant's behalf to care for the insur-

ance of plaintiff's property, a different rule operates. Defendant employed Quartier to solicit subscribers for defendant's "exchange," "agency," "brokerage," or call it what we may. Defendant held itself out, under a license from the State and under the State law, as an "agent," "attorney," "helper" or "exchange" engaged in the business of looking after, and caring for other persons' insurance and indemnity. Quartier was the agent and solicited the plaintiff to engage the defendant to look after all of plaintiff's business in regard to automobile insurance. What Quartier did as the agent and representative of the defendant, the defendant is held to have agreed and consented to. The plaintiff and Quartier both signed this instrument. The contract would have been the same if there were no written agreement, if it had been entered into verbally between Quartier and plaintiff. The written instrument is simply the evidence that such an agreement was made. One of the provisions of the instrument was that it could be canceled or annulled by either party at any time by giving notice to the other party. The written instrument, as signed became at once a valid and complete power of attorney, solicited and accepted by the defendant, by which the defendant undertook to look after and manage plaintiff's insurance, as requested in the instrument, and until this "power of attorney" was canceled by one of the parties, it became the duty of the defendant to use due care and diligence in acting for and procuring insurance or indemnity for plaintiff upon his automobile. Defendant, by the terms of this instrument, and all the undisputed testimony in evidence in this case, was an insurance broker. The authority for this is ample.

An insurance broker is defined as: Broker who "procures insurance and negotiates between insurers and insured"; "one who acts as middleman between the insured and the insurer; one who solicits contracts

from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any selection by him, then with the company selected by such broker." "A person or agent employed to make bargains and contracts between other persons in matters of trade, commerce and navigation for a compensation commonly called a brokerage." 9 Corpus Juris, pp. 508-509; 22 Cyc. p. 1445; *Saladin v. Mitchell,* 45 Ill. 84; *Morehouse v. Winter,* 159 Ill. App. 299-300; *Robinson, Norton & Co. v. Corsicana Cotton Factory,* 124 Ky. 435, 8 L. R. A. (N. S.) 474, and note.

The authority goes so far in 22 Cyc. p. 1445, as to hold: "But the same person may act for different purposes as agent of the different parties to the contract, so that for one purpose he may be the agent for the insured, although as to the procuring of the insurance he also represents the company." Quoting various cases cited. Formerly in Illinois one could not act as the agent of different parties in the same transaction where their interests were antagonistic, but, if the act as to reciprocal insurance is constitutional, and the instrument "power of attorney" in this case, drafted by defendant, within the public policy of the State, we are compelled to hold that the rule laid down in *People's Ins. Co. v. Paddon,* 8 Ill. App. 447, is not the law of Illinois at this time in reference to this class of insurance.

Defendant contends that it is only engaged in exchanging insurance, on the reciprocal plan, through this one "agency," except in case of reinsurance. The draft of the defendant's plan of business and this power of attorney provides for and authorizes defendant, *"at its sole discretion to place insurance for plaintiff directly in any insurance corporation."* Defendant's business must be determined from its transaction with appellant and not from the testimony of

its president on the trial of this case. With this provision in the contract, defendant's business becomes a brokerage, under all of the definitions given. Defendant contends that the last clause in the instrument, "This application not valid until approved by the Attorney in Fact and a policy issued," applies to the whole instrument and that defendant was not the attorney in fact of the plaintiff until the defendant had approved this instrument and had agreed to act as attorney in fact, and a policy had issued. The clause cited referred only to the application for insurance in this specific "exchange," and, in the dual nature of this instrument, had nothing to do with the power of attorney, solicited by Quartier, and granted to defendant to act for the plaintiff.

In this case, the defendant, appellee, is liable to plaintiff for any damages resulting to plaintiff by the negligence of this defendant in failing to act in pursuance of said power of attorney to care for said plaintiff's indemnity: *Reed Mfg. Co. v. Wurts*, 187 Ill. App. 378; *Rochis v. Milascewicz*, 211 Ill. App. 262; 22 Cyc. p. 1448; 9 Corpus Juris, p. 535; *Elam v. Smithdeal Realty & Insurance Co.*, 182 N. C. 599, 18 A. L. R., 1210, and notes; p. 1214.

It was held in *Reed Mfg. Co. v. Wurts*, 187 Ill. App. 378: "If an agent neglects to procure insurance or does not follow instructions when obligated so to do, or if the policy obtained is void or materially defective through the agent's fault, or if the principal suffers damage by reason of any mistake or act of omission or commission of the agent, which constitutes a breach of duty to his principal, he is liable to his principal for any loss he may have sustained thereby. 1 Joyce on Insurance, sec. 678; Kerr on Insurance, sec. 120; 1 Cooley's Briefs on the Law of Insurance, p. 338"; and plaintiff cites the case of *Duffie v. Bankers' Life Ass'n*, 160 Iowa 19, 46 L. R. A. (N. S.) 25, which was an action on the case to enforce liability against a

life insurance company for negligent delay in passing upon or issuing a policy until after a loss had occurred, and where the company was engaged in the business of issuing policies of insurance on which it was financially responsible to the insured for the entire loss, the court said:

"It is to be observed that the petition does not proceed on the theory that from the retention of the application and unreasonable time without acting thereon acceptance of the application is to be presumed, nor on the theory that defendant is estopped from denying such acceptance because of having misled the applicant in some way.  *  *  *  The action is not based on contract, either express or implied, but solely on tort; the theory of the plaintiff being that, having solicited and received the application for insurance, it owed the applicant the affirmative duty either of rejecting the application or of accepting it within a reasonable time, and upon breach of such duty it is liable for all damages suffered in consequence of such breach."

In 9 Corpus Juris, p. 535, it is held: "A broker is bound to exercise reasonable skill and diligence in the transaction of the business intrusted to him, and he will be responsible to his principal for any loss resulting from his failure to do so; beyond this he is not bound. If he exercises the same degree of care and diligence that a prudent man would exercise in a like business he is entitled to compensation and is not liable for losses resulting to the principal." In the *Elam* case (N. C.) 18 A. L. R. page 1210, the same rule is laid down, and on page 1214, and following, is an annotation of the decisions of the several States, from which the following general rule is adduced and cited: "It may be laid down as a general rule that a broker or agent who, with a view to compensation for his services, undertakes to procure insurance on the property of another, and who fails to do so, will

be held liable for any damages resulting therefrom.''

In the trial of the case at bar, it was not mooted, as to the facts, what defendant did or did not undertake to do for the plaintiff. The facts were all before the court, undisputed, and it became, therefore, a question of law, based upon such facts, to determine the duty of the defendant in the premises.

It follows that the giving of defendant's tenth modified instruction, leaving it to the jury to determine whether the defendant undertook to act as an insurance broker in behalf of plaintiff, which, in the state of the record, was a matter of law, constituted reversible error; for which the judgment in favor of defendant will have to be reversed and cause remanded.

*Reversed and remanded.*