Warren Porterfield, a/k/a Lawyer Stuckie, for the Use of Oscar Thomas, Plaintiff-Appellant, v. Truck Insurance Exchange, Defendant-Appellee.

**Gen. No. 48,044.**

First District, Third Division.

December 14, 1960.

Donald J. Seeley, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Karl M. Tippet, of counsel) for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Oscar Thomas was injured by a truck driven by Warren Porterfield and owned by Gary Klaus, by whom Porterfield was employed. He sued both Porterfield and Klaus. Klaus was dismissed but a verdict of $7,000.00 was returned against Porterfield. Thomas then garnisheed the Truck Insurance Exchange, Klaus' insurance carrier. The Truck Exchange answered that, under the facts of the case, its insurance did not cover Porterfield. After a hearing the court discharged the garnishee defendant. Thomas appeals from that order.

The insurance policy covered the employees of Klaus in the following language:

". . . with respect to the insurance afforded by this policy . . . the unqualified word 'insured' includes . . . (3) . . . any employee of the named insured provided the actual use of the automobile is under the direction and control of the named insured and is in the course of his employment with the named insured, . . . ."

The accident occurred about 3:00 a.m., March 8, 1958, at 312 East 53rd Street, Chicago, where the

196

truck and Thomas' automobile were parked. Porterfield backed the truck into the auto. Thomas, who lived at that address, was aroused by the crash and came to the street. As he was standing in front of his car Porterfield again backed up the truck, this time striking Thomas. Porterfield drove away but later returned; he was then arrested for driving while intoxicated and for leaving the scene of an accident.

At the garnishment hearing Porterfield testified that he was employed as a helper on Klaus' trucks, which were used for hauling bricks, that, although he had no chauffeur's license, he occasionally drove the trucks and sometimes did so at Klaus' request. The day before the accident he was the helper on a truck driven by Oscar Fullilove. After completing their work they returned to the Klaus place of business. He said they arrived there after 7:30 p.m., but could not enter the yard because the gates were closed and there was no employee on duty. He testified Fullilove turned the truck over to him with directions to drive to Klaus' house to turn in his time, and to have the truck back the next morning. He reported to Klaus, he said, but did not mention the truck. He drove it away without Klaus' knowledge, parked it later on 53rd Street, drank beer with a friend and slept until he got in the truck again just before backing it into Thomas' car.

The only other witness was Fullilove, who was no longer employed by Klaus. He testified he and Porterfield arrived at the yard before 5:00 p.m., that he drove the truck into the yard, left the keys in the truck as was the practice, spoke to the yardman, got in his own car, left for home and turned in their March 7th work ticket when he came to work the next morning. He said if the gates had been closed when they returned from their day's delivery he would have followed the normal procedure of leaving the truck at

197

a gas station a block away. He denied turning the truck over to Porterfield. He testified Porterfield often drove trucks inside the yard and a number of times on the outside, but only to a nearby track and back.

██ ██ In view of this evidence, the finding of the trial court that the Truck Exchange was not liable because Porterfield was not in the course of his employment at the time of the occurrence and because he was not driving the truck under the control and direction of Klaus, will not be disturbed. Where the testimony is contradictory the trial court's finding, on review, is to be accorded the same weight as the verdict of a jury and will not be set aside unless it is manifestly against the weight of the evidence. Walters v. Coleman, 26 Ill. App. 2d 397, 168 N.E.2d 457; Mayflower Sales Co. v. Frazier, 325 Ill. App. 314, 60 N.E. 2d 123.

Thomas urges, however, that Porterfield had permission to drive the truck. He argues that if the policy did not extend to Klaus under the doctrine of respondeat superior, it did to Porterfield because Klaus, by giving Porterfield permission to drive the truck in and about the brick yard, impliedly granted him permission to drive the truck thereafter. Several cases are cited which hold that if permission is once granted for the use of an automobile for a specified purpose and the permitted driver then deviates from that purpose, the driver, nevertheless, is covered by the policy. Apart from the question of whether implied permission could be inferred from the evidence in this case, there is a major flaw in this argument. All of the cases cited concern policies which contain extended coverage provisions, commonly referred to as "omnibus clauses," under which the insurance protection was extended to any person driving the insured's automobile with his permission. However, the policy now under consideration contains no such provision.

To supply this deficiency, Thomas seeks to apply section 7–317(b)2 of the Illinois Motor Vehicle Law which provides that an owner's policy of liability insurance, "Shall insure the person named therein and any other person using or responsible for the use of said motor vehicle or vehicles with the express or implied permission of said insured; . . . ." Ill. Rev. Stat. ch. 95½, sec. 7–317(b)2 (1959).

The same contention was made, and decided adversely to Thomas' position by this court, in McCann for Use of Osterman v. Continental Cas. Co., 6 Ill. App. 2d 527, 128 N.E.2d 624, aff'd 8 Ill. 2d 476, 134 N.E.2d 302. The statute referred to is part of the Financial Responsibility Law (chapter 7 of the Motor Vehicle Law) and was formerly section 58(k) of that law. In the McCann case we said the statute was applicable only to those insurance policies which are required by the operation of the statute and which are filed to show proof of the financial responsibility of the driver. See also Pohlman v. Universal Mut. Cas. Co., 12 Ill. App. 2d 153, 138 N.E.2d 848; Stollery Bros. Inc., v. Inter-Insurance Exchange, 15 Ill. App. 2d 179, 145 N.E.2d 768. There is nothing in the present case to show that Klaus had a judgment against him which had not been paid and that he had become subject to the law with respect to proof of his future financial responsibility.

■ Thomas urges that an omnibus clause should be read into this policy and that, as a matter of public policy to protect innocent third parties and the general public, every automobile casualty policy should contain such a clause. Obviously, this is something which is not within our province. As was said in McCann, "There is no statute in Illinois requiring an omnibus clause in every policy of insurance." It is the function of the court to construe a policy as it is written. We cannot rewrite a policy to enforce liability where the clear terms of the policy exclude or limit it. We

199

find no reasonable construction of the present policy possible which, under the facts, would bring Porterfield within its provisions.

The judgment of the Municipal Court will be affirmed.

Affirmed.

SCHWARTZ, P. J. and McCORMICK, J., concur.