Liberty Mutual Insurance Company, Plaintiff-Appellee, v. Seymour Gordon, d/b/a Webb Enterprises, Defendant-Appellee, and Fidelity General Insurance Company, Garnishee-Defendant-Appellant.

**Gen. No. 51,947.**

First District, Third Division.

April 4, 1968.

Rehearing denied April 30, 1968.

Sullivan & Cooper, and Canel & Canel, of Chicago (Jay A. Canel, of counsel), for appellant.

Sweeney and Riman, of Chicago (Marvin Riman, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

This is a garnishment action in which the plaintiff, Liberty Mutual Insurance Company (Liberty), claims that an Illinois workmen's compensation policy issued by the garnishee-defendant, Fidelity General Insurance Company (Fidelity), to the defendant, Seymour Gordon, d/b/a Webb Enterprises (Gordon) covered a project undertaken by Gordon in Wisconsin.

In May of 1959 Gordon, a scrap metal dealer in Chicago, Illinois, called an insurance broker and requested workmen's compensation insurance for his business. The broker wrote Fidelity stating that Gordon was a metal dealer with an estimated annual payroll of $7,000. In June, 1959, Fidelity issued a policy to Gordon for one year.

Four months later, Gordon entered into a written agreement with Lernor Iron & Metal Company, Inc. (Lernor) for the dismantling and scrapping of the metal components of a power station located in Beloit, Wisconsin. He asked Fidelity to certify to Lernor that he had workmen's compensation coverage but, unlike other requests from Gordon for certificates of insurance for his customers, this one was refused. Gordon then commenced the project without securing other workmen's compensation coverage.

In December of 1959 one of Gordon's employees at the power station was injured. Gordon notified Fidelity, which denied liability and refused to defend him.

Thereafter, the Industrial Commission of Wisconsin made an award to the injured employee. The award was paid by Lernor's insurer, Liberty, which then sued Gordon in Wisconsin for reimbursement and obtained a judgment against him. This judgment was recognized in Illinois in a suit against Gordon in the Circuit Court of Cook County. To recover on this judgment, Liberty then sought to garnish the debt which it claimed Fidelity owed Gordon under Fidelity's policy. The trial court found that the policy covered the Wisconsin project and entered judgment in favor of Liberty.

Fidelity appeals from the judgment. It contends that it is not liable under its policy because (1) Gordon's Wisconsin undertaking was of a different nature than his Illinois business, (2) that an endorsement in its policy (termed the "All States Endorsement") did not extend coverage to the Wisconsin undertaking under the circumstances of this case and (3) because Gordon made material misrepresentations of fact in obtaining the policy.

The policy described Gordon as an iron or steel scrap dealer with an estimated annual payroll of $7,000. In addition, just after the issuance of the policy, an engineer, who had been ordered by one of Fidelity's underwriters to inspect Gordon's business, described it as a buying

and selling operation, consisting almost entirely of picking up metals at various factories. His written report stated that the work was performed by Gordon and one employee, and that no power equipment was used other than one truck. In contrast, Fidelity claims that the Wisconsin project was a demolition operation involving the use of cutting torches, with four to nineteen employees and a payroll of approximately $30,000.

■ Whether there was a substantial change from the risk described in the insurance policy was a question of fact resolved by the trial court in favor of the plaintiff. The finding of fact by the trial court is to be accorded the same weight as the verdict of a jury and it will not be reversed on review unless it is against the manifest weight of the evidence. Porterfield v. Truck Ins. Exchange, 28 Ill App2d 195, 171 NE2d 108 (1960).

■ The trial court's finding was not contrary to this standard. First, Gordon testified that it was customary in the scrap metal business to cut the items purchased with torches to obtain usable metal to ease handling and transportation. Second, he testified that in the ordinary operation of his business he dismantled and scrapped large metal objects such as baking ovens, boilers and water towers; that in doing so he used cutting tools and torches and that this was the same equipment used on the Wisconsin job. Third, Fidelity had certified that Gordon was insured under its policy when he undertook the projects just mentioned, which involved the same sort of activity as the operation in Wisconsin. Fourth, Fidelity, in refusing to issue a certificate for the Wisconsin operation, gave as its reason the fact that it did not have authority to write workmen's compensation insurance in Wisconsin, not that the Wisconsin project was substantially different from the risk covered in the policy. From this testimony and evidence the trial court could reasonably find that the dismantling and scrapping of the metal objects on

93

the premises of the power station in Wisconsin was performed in the ordinary course of Gordon's work as a metal dealer and that this did not involve a substantial change in risk from that covered in the policy.

Fidelity next contends that Gordon cannot recover under the terms of the "All States Endorsement." This endorsement provides:

"A.  In the event the insured undertakes operations in any state not designated in Item 3 of the declarations, other than Nevada, North Dakota, Ohio, Oregon, Washington, West Virginia or Wyoming, the company agrees as follows:

"1.  To reimburse the insured for all compensation and other benefits required of the insured under the workmen's compensation or occupational disease law of such state. . . ."

The endorsement is intended to provide for possible exposure to liability under state workmen's compensation laws to which the insured does not expect to be subject. See, for example, the typical situations presented in the insurance industry's authoritative publication, The Fire, Casualty and Surety Bulletin, Casualty and Surety Section, Workmen's Compensation subsection, WC Bas–1, December, 1954:

"(1)  An employe might unexpectedly be sent into a state which was not considered at all when insurance was written and the law of that state [might] be broad enough to include him. (2) A change in the law of a particular state or a new interpretation of the law by an administrative body or court might bring an employe under it. (3) An unexpected expansion of the insured's activities in a particular state—hiring some more employes locally or changing the duties of some employes— might bring employes under the law of another state."

94

██ ██ In the present case Fidelity argues that the endorsement does not protect Gordon because he knew that he would be exposed to Wisconsin law at the time he began his work in that state. However, as indicated in the foregoing examples in the National Underwriters' bulletin, the relevant period to determine the expectation of coverage is the time of entering the policy. At that time, Gordon did not know that he would be doing work in Wisconsin. His exposure to the workmen's compensation law of that state was unexpected and he was therefore covered under the "All States Endorsement" for the ensuing liability.

Fidelity further contends that Gordon cannot recover under this endorsement because it had the right, which it exercised, to require Gordon to take steps to bring himself within the Wisconsin workmen's compensation laws. However, Fidelity never requested Gordon to bring himself within these laws; it merely refused to certify that its policy covered the Wisconsin operation. Moreover, even if it had requested Gordon to take such a step, it would be in breach of a concomitant provision of the policy to "issue, in the form required by [the laws of Wisconsin], workmen's compensation coverage under such laws. . . ."

██ Fidelity also contends that Gordon cannot recover because he paid no compensation to the injured employee and therefore there is no duty to reimburse him. However, the plaintiff in a garnishment action may have the property of its judgment debtor applied to the payment of his debts. In this case, the property of the judgment debtor, Gordon, is his cause of action for breach of contract against Fidelity for the latter's refusal to defend the suit brought against him by Liberty. The measure of damages is the amount Liberty recovered against Gordon plus interest and costs. See Kinnan v. Charles B. Hurst Co., 317 Ill 251, 148

NE 12 (1925) ; Sims v. Illinois Nat. Cas. Co., 43 Ill App2d 184, 193 NE2d 123 (1963).

Finally, it is contended that Gordon was guilty of a material misrepresentation of fact in his application for insurance and that as a result Fidelity has the right to void the policy. Fidelity claims that Gordon represented his business as a scrap metal dealer when he actually conducted a "wrecking" operation. However, the trial court found that a scrap metal dealer cuts and dismantles items in the ordinary course of his business. Thus, there was no misrepresentation to Fidelity and we need not consider Fidelity's contention further.

The judgment of the Circuit Court will be affirmed.

Affirmed.

SCHWARTZ and SULLIVAN, JJ., concur.