JACOB PUGH *et al.*, Plaintiffs-Appellants, *v.* ARNOLD BERSHAD, Individually, d/b/a COOK COUNTY AUTO INSURANCE AGENCY, Defendant-Appellee.

(No. 54445;

First District—May 20, 1971.

Alan Kawitt, of Chicago, for appellants.

Reibman & Hoffman, of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Jacob Pugh owned an automobile which carried insurance placed through Arnold Bershad, a broker with whom he had done business for five years. In late June 1966 Pugh received notice that the policy would be cancelled on July 8, 1966. The following day he and Bershad discussed the prospective cancellation. According to Pugh, he requested other insurance and was assured by Bershad that he would be fully covered by another company before July 8th. On July 11th his car was stolen. He reported the theft to Bershad and was told, he said, that he would receive the new policy any day. He thereafter learned that his car was not insured on the day of the theft.

Pugh and his wife brought suit against Bershad for the value of the insurance on their stolen car and, alternatively, for $2,900.00 damages for fraudulently representing that he had reinsured their automobile when in fact he had not. The court, sitting without a jury, found for Bershad. The Pughs contend the finding was against the manifest weight of the evidence and that the court erred in ruling on evidence.

At the trial, Pugh, in addition to the testimony already related, testified that when his new policy did not arrive as Bershad said it would, he made several attempts to talk to him. His telephone calls were not returned and finally, a few weeks later, he went to Bershad's office. There, for the first time, he was shown a policy which went into effect a week after the car was stolen. Bershad said the effective date was probably a clerical error, promised to have it corrected and said: "There is nothing for you to worry about. The agency will be responsible anyway." After this conversation, Pugh's efforts to contact Bershad were unsuccessful.

During cross-examination, Pugh stated that his auto was a sports car,

that it had been stolen at one time before his policy was cancelled and had been damaged to some extent. He also revealed that he had been convicted of driving while under the influence of alcohol and because of this Bershad had to obtain financial responsibility insurance for him. He said he realized that it was difficult to obtain insurance for an owner of a sports car who had been convicted of drunken driving. He also asknowledged that, between the time he received notice that his policy would be cancelled and the effective date of cancellation, he had tried to obtain insurance from the Allstate Insurance Company.

Mrs. Pugh testified that she telephoned Bershad the morning the car was stolen and was told by him that they were fully covered through the Progressive General Insurance Company, but he instructed her not to contact the company until the new policy was received. Both Mrs. Pugh and her husband denied ever talking to a representative of the Progressive company.

Bershad testified that he received notice of the cancellation on June 29th or 30th and that it was he who called Pugh. He spoke to him about obtaining insurance from a different company but Pugh replied: "Let me see what I can do myself, and I will call you back." He called Pugh again the day before the cancellation became effective. Pugh said that he had been unsuccessful in getting other insurance and asked Bershad to try to get him covered. Bershad agreed to make an application for insurance and that very day [July 7, 1966] sent an application to Progressive General. He testified that he did not and could not place a "binder" on the car and never told Pugh he would. He said he was without authority to do so because the companies he dealt with would not accept a binder on the type of risk Pugh was: a sports car owner who had carried financial responsibility insurance and whose current insurance had been cancelled.

Introduced into evidence was Bershad's application to Progressive General dated July 7, 1966, and a reply dated July 12, 1966, declining coverage unless an increased premium was paid. Bershad testified that he received the reply on July 13th or 14th and immediately informed the company that the policy would be accepted.

He further testified that he received a telephone call from Mrs. Pugh on the 11th of July informing him that the car had been stolen. He told her an insurance application was pending at Progressive General and asked her not to call the company.

■■ The courts' decision was not contrary to the weight of the evidence. On review, a trial court's finding is accorded the same weight as the verdict of a jury and it will not be reversed unless it is against the mani-

fest weight of the evidence. (*Porterfield v. Truck Insurance Exchange* (1960), 28 Ill.App.2d 195 171 N.E.2d 108.) The issues at the trial were whether Bershad promised to have Pugh's auto reinsured before his current insurance expired on July 8, 1966, and whether, in doing so, he made false representations which misled Pugh. An insurance broker who neglects to procure insurance when obligated to do so, or who by reason of any omission or commission causes damage to his principal, is liable for any loss the principal may sustain. (*Johnson v. Illini Mutual Insurance Co.* (1958), 18 Ill.App.2d 211, 151 N.E.2d 634.) On the other hand, if a broker acts in good faith and with reasonable care, skill and diligence to place the insurance in compliance with his principal's instructions, he is not liable for damages which are not due to his fault. (*Mosteiko v. National Inter-Insurers Corp. of Chicago* (1923), 229 Ill.App. 153.) The resolution of these issues depended, in the main, on the credibility of the witnesses. It did not depend, as Pugh urges, on the number of witnesses who testified on his side. I.L.P., Appeal and Error, sec. 778.

■■ Mrs. Pugh's credibility was brought into question by her testimony that she had not spoken to a representative of the Progressive General Insurance Company. Attached to the interrogatories and answers in the court file was a report from an investigator for the company stating that he had interviewed Mrs. Pugh at her home. The report contained information obtained from her and concluded with a recommendation that the application be accepted provided the Pugh's car was found. This report not only impeached Mrs. Pugh's testimony, it corroborated Bershad's. It showed that at the time of the interview an application for insurance was pending and that the Pughs were aware that their car was uninsured.

Also corroborating Bershad's testimony were the exhibits showing his application to the Progressive dated July 7th and the company's reply of July 12th, rejecting coverage unless a greater premium was paid. Moreover, Bershad's testimony that he was without authority to bind an insurance company because of Pugh's being an unusual type of risk was uncontroverted. A binder is a memorandum of agreement for insurance intended to give temporary protection pending investigation of the risk and issuance of a formal policy. (Black's Law Dictionary, 3rd ed.) It is a valid contract which permits an owner of an automobile to operate an insured vehicle until his application is accepted or rejected. (7 Am. Jur.2d, Automobile Insurance, sec. 3.) Since Bershad was unable to issue a binder, and if, as he testified, Pugh waited until July 7th to ask his aid, he was powerless to do more than he did before July 11th, the day the car was stolen. Bershad's statement that the request from Pugh was

delayed until July 7th was substantiated by Pugh's admission that he had been trying to get insurance himself and had made a futile application to the Allstate company.

Where there is sufficient credible evidence to support the finding of the trier of fact, the finding will not be disturbed on appeal. (*Liberty Mutual Insurance Company v. Gordon* (1968), 94 Ill.App.2d 90, 236 N.E.2d 377; *Inter-Insurance Exchange v. Travelers Indemnity Company* (1965), 57 Ill.App.2d 17, 206 N.E.2d 518.) The court's decision was not contrary to the manifest weight of the evidence but in accord with it.

The Pughs contend the court improperly received evidence that Pugh had sought to obtain insurance from Allstate, that he had been convicted of drunken driving and covered by financial responsibility insurance, and that their auto had been stolen previously.

The testimony that Pugh tried to purchase insurance elsewhere was relevant to the issues. The testimony concerning Pugh's financial responsibility insurance and conviction for driving while intoxicated was relevant to Bershad's defense that Pugh was not eligible for temporary insurance. Moreover, Pugh had testified on direct examination that he obtained this coverage through Bershad; since this testimony was in the record its repetition was harmless. (*Eizerman v. Behn* (1956), 9 Ill.App. 2d 263, 132 N.E.2d 788.) The testimony concerning the prior theft and the resultant damage to the car was relevant to the market value of the car and the question of damages in the event Pugh prevailed at the trial.

The Pughs also argue that the court improperly overruled their objections to the July 7th application for insurance and the July 12th letter declining it. However, no objection whatever was made in the trial court to the admission of the application. The July 12th letter was either a copy or a duplication of the original—the record does not show which—and the objection to it was on the ground that it was secondary evidence and a proper foundation had not been laid for its admission. Bershad testified that he had left the agency to which this letter was sent, that he was employed elsewhere and had made a diligent search but was unable to find the original. The absence of the original was adequately accounted for and the court did not abuse its discretion in receiving in evidence the offered document. In their brief, the plaintiffs argue that the exhibit was inadmissible because they, as adverse parties, were not given notice to produce the original. This argument fails for two reasons. The original was never in the possession of the Pughs and no objection to lack of notice was made in the trial court. A new objection cannot be raised for the first time at this stage of the proceedings.

The plaintiffs raise, as Point 7 of the brief, the contention that "only evidence in the record made *at the trial* may be considered in basing his

decision." This point, however, is not discussed in their brief. Points raised but not argued are waived and will not be considered. Supreme Court Rule 341 (7); *Village of Roxana v. Costanzo* (1968), 41 Ill.2d 423, 243 N.E.2d 242.

■■ The evidence established that Pugh, a difficult risk, after being notified of the cancellation of his insurance, undertook to obtain coverage from Allstate Insurance Company and returned to Bershad after he was turned down. The delay in obtaining insurance was caused by Pugh's own act, and for this the broker cannot be held responsible. Inasmuch as Bershad was without authority to issue a binder, he filed an application for insurance and while the application was pending Pugh's auto was stolen. The broker was neither negligent nor guilty of fraudulent representations which led to the plaintiff's damage. The judgment in his favor is affirmed.

Prior to the trial, a notice was served on Bershad asking him to admit that the value of the stolen auto, assuming it was in good condition, was $2,000.00, as stated in the Red Book National Market Reports. An order was entered that the notice be taken as admitted. Costs were taxed against the defendant in the sum of $45.16, consisting of $25.00 in attorney's fees, $15.00 for a court reporter and $5.16 for subpoena fees. Bershad has cross-appealed from the order and the taxation of costs, contending he had no duty to admit facts under Supreme Court Rule 216 (a) of which he had no knowledge.

Although the cross-appellant states that an answer was filed denying knowledge of the publication, Red Book Reports, no responsive pleading to the notice to admit facts was filed with the record on appeal and no transcript of the proceedings before the judge who entered the order has been presented to this court.

The representation that an answer was filed to the notice will not substitute for either a copy of the answer in the record or a showing that the errors urged on appeal were presented to the trial court.

The order taking the facts in the notice as admitted (Rule 216 (a) ), and assessing costs against the cross-appellant, is affirmed.

The judgment is affirmed.

Judgment affirmed.

McNAMARA, P. J., and McGLOON, J., concur.