JOHN BLACK *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS FAIR PLAN
ASSOCIATION *et al.*, Defendants-Appellees.

Fifth District    No. 79-548

Opinion filed September 4, 1980.

Richard G. Younge, of East St. Louis, for appellants.

Walker & Williams, P. C., of Belleville, and Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Ferrini, Elizabeth Pendzich, and David B. Stutsman, of counsel), for appellee Illinois Fair Plan Association.

Freeark, Harvey & Mendillo, of Belleville (Jim Mendillo, of counsel), for appellee Marion M. Glore.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiffs, John and Dora Black, appeal from the judgment of the Circuit Court of St. Clair County granting summary judgment in favor of the defendants, Illinois Fair Plan Association and Marion M. Glore. All parties filed motions for summary judgment prior to trial and attached thereto affidavits and portions of discovery depositions.

This case concerns the liability of the Illinois Fair Plan Association and an insurance agent for Allstate Insurance Co., Marion M. Glore, for issuing and obtaining, respectively, a fire insurance policy covering the wrong premises. The facts are relatively undisputed.

In December 1975, the plaintiffs, John and Dora Black, purchased a house located at 631 N. 32nd Street, East St. Louis, Illinois. This property was adjacent to property already owned by the Blacks and occupied as their residence, at 629 N. 32nd Street.

The Blacks desired to insure the property at 631 N. 32nd Street and contacted Glore who had previously obtained insurance on this property. Glore filled out an application and submitted it to Allstate, which initially issued its policy on the premises; however, on January 18, 1976, Allstate cancelled the policy because the Blacks did not reside on the property. Glore then suggested that coverage might be obtained through the Illinois Fair Plan Association, a program under the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 1065.69 *et seq.*) requiring insurers, under certain conditions, to provide insurance to property owners who cannot obtain insurance through private companies.

An application to the Illinois Fair Plan Association (Association) was completed by Glore and signed by John Black. In filling out the application Glore inserted 629 N. 32d Street as the premises to be insured, rather than 631 N. 32d Street. Black signed the application without detecting the error, and, according to his testimony, signed the application in blank at Glore's direction. In any event, the application was approved and became effective on February 18, 1976. When Black received the policy he glanced at it but failed to detect the mistake. Glore admitted that he inserted the incorrect address in the application. A fire loss occurred on June 17, 1976. Liability was denied by the Association because it had insured 629 N. 32d Street, not 631 N. 32d Street. Thereafter, the Blacks brought this action seeking to reform the contract of insurance and to recover damages from Glore for his negligence in obtaining insurance on the wrong property.

Black's action against the Association sought reformation of the insurance contract. Recovery on the contract as reformed was sought. The trial court ruled that plaintiff was entitled to neither reformation nor recovery on the contract inasmuch as Glore was not the agent of the Association, but of the Blacks in obtaining the policy of insurance.

Section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57) provides that summary judgment may be entered for a party where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." However, if a reviewing court finds that a material question of fact does exist, an order granting summary judgment must be reversed.

■■ Applying the above standard to the ruling with respect to the Association, it cannot be said that any material fact was left unresolved as to any issue before the trial court. The trial court was correct when it stated that for there to be any right to reformation, Glore must be the agent of the Association. This premise is logically related to the rule followed in Illinois regarding reformation of contracts. That rule was stated in *Phillips v. Salk, Ward & Salk, Inc.* (1974), 20 Ill. App. 3d 359, 367, 314 N.E.2d 262, 268:

> "In order to reform a contract of insurance the party seeking reformation must show by clear and convincing evidence that at the time the contract was executed there existed a mutual mistake of fact, not law, common to both parties to the contract, and that because of this mutual mistake of fact the policy as issued does not reflect the real agreement between the parties."

Because the mistake must be mutual between the parties to the contract before reformation may be granted, it was the plaintiff's burden to show that the Association and the Blacks were mistaken as to the same material fact regarding the contract, namely, that the Association also intended to insure the property at 631 N. 32d Street. Plaintiff sought to satisfy this burden by showing that Glore was the agent for the Association, and thus, his knowledge would be imputed to the principal.

There was no evidence that Glore was the agent for the Association. The definition of "insurance agent" is codified in section 490(a) of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 1065.37(a)) as an "individual, firm, partnership, association or corporation appointed by an insurer to solicit, negotiate or bind coverages for or on applications or policies of insurance on its behalf, covering property or risks located in this State."

In defining an insurance agent, a useful test was set down in *Galiher v. Spates* (1970), 129 Ill. App. 2d 204, 207, 262 N.E.2d 626, 628. "Insurance agents have a fixed and permanent relation to the companies they represent and have certain duties and allegiances to such companies." In the instant case, Glore had no fixed and permanent relation to the Association. Rather, his contract of employment was with Allstate Insurance Company. Glore's contract provided that he could submit applications to the Association but to no other insurance company. The reason this exception existed was because Allstate was required under section 525 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 1065.72) to participate in the Associa-

tion's program of insuring homeowners who were refused coverage by private insurance companies.

Thus, while Glore could solicit applications for the Association, his ability to do so was not fixed by means of any permanent relation with the Association. Rather, this relationship was established through his contract with Allstate in order to satisfy Allstate's statutory duty.

■■ We conclude that under these circumstances, Glore was acting as an insurance broker when he submitted the Blacks' application to the Association and thereby became an agent for the insured. The term "insurance broker" is defined in section 490 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 1065.37(b)) as "* * * an individual, firm, partnership, association or corporation, while not acting as a duly licensed insurance agent, who solicits, negotiates, procures, renews or continues a policy of insurance on behalf of insureds or prospective insureds other than himself."

Glore filled out and submitted the application for insurance at the request of the Blacks. Furthermore, Glore was representing the Blacks' interests when he suggested insurance through the Association after the Blacks had been rejected by Allstate. Thus, the criteria set down in *Browder v. Hanley Dawson Cadillac* (1978), 62 Ill. App. 3d 623, 629, 379 N.E.2d 1206, 1211, and *Galiher v. Spates* support the conclusion that Glore was acting as an insurance broker. Glore was called into action by the Blacks who further directed him to submit an application to the Association. All of this was done with a view of protecting the Blacks' interest in the property at 631 N. 32d Street.

It is appropriate to note that even though Glore was not an "insurance agent" for the Association, he was acting as an agent for the Blacks in performing his duties as an insurance broker. In other words, Glore was an insurance agent for Allstate, served in the capacity of an insurance broker when dealing with the Association and thereby established himself as the Blacks' agent in a principal-agency relationship.

In *Ross v. Thomas* (1977), 45 Ill. App. 3d 705, 708, 360 N.E.2d 126, 128, the court found that a broker is by definition an agent of the insured. While other courts consider such a question a determination of fact to be made in each case, the facts as presented here do not leave any doubt that Glore was acting as an agent for his principals, the Blacks, and was not acting in any agency capacity for the Association.

■■ Inasmuch as Glore was not an agent for the Association, nothing that Glore knew or should have known, nor any negligent act on his part can be imputed to the Association. The mistake was unilaterally made by the insured and the insured's agent. Unilateral mistake is not a ground for reformation, absent fraud by the other party to the contract (*Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 378 N.E.2d 243). The action for

reformation was properly denied by the trial court, there being no genuine issue of material fact.

The second issue presented is whether summary judgment for Glore was proper. The trial judge found as a matter of law that the Blacks were contributorily negligent because they signed the application while it was at least partially blank and failed to note the misstated address on the face of the policy when they received it.

In *Evan L. Reed Manufacturing Co. v. Wurts* (1914), 187 Ill. App. 378, the liability of an agent of the insured, in wrongfully procuring an insurance policy, was described:

> "If an agent neglects to procure insurance or does not follow instructions when obligated so to do, or if the policy obtained is void or materially defective through the agent's fault, or if the principal suffers damage by reason of any mistake or act of omission or commission of the agent which constitutes a breach of duty to his principal, he is liable to his principal for any loss he may have sustained thereby." 187 Ill. App. 378, 385.

This liability for negligently procuring a defective policy naturally flows from an insurance broker's common law duties owed to the insured. In this regard, the relationship between an insured and his broker, acting as the insured's agent, is a fiduciary relationship notwithstanding the fact that the broker may be compensated by some third party. *Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 379 N.E.2d 1206.

Glore seeks to rely on several cases for the proposition that an insured is bound to know the contents of his or her insurance policy. This contention, while true as a general proposition, must be tested in light of the fiduciary relationship existing between an insured and his agent.

On appeal Glore relies heavily on *Foster v. Crum & Forster Insurance Companies* (1976), 36 Ill. App. 3d 595, 345 N.E.2d 49. In that case, the plaintiffs (parents of the deceased) were denied recovery on an insurance contract that limited survivor's benefits to dependent spouses and minor children. In spite of vague language in a letter explaining the terms of the contract, this court stated that the plaintiffs were bound by the contract terms because the insured has a duty to know the contents of the policy and to bring discrepancies to the attention of the company.

The *Foster* case and others like it (*Capps v. National Union Fire Insurance Co.* (1925), 318 Ill. 350, 149 N.E. 247; *Pollock v. Connecticut Fire Insurance Co.* (1935), 281 Ill. App. 305; *County of Williamson v. Standard Accident Insurance Co.* (1961), 32 Ill. App. 2d 363, 178 N.E.2d 149) are not in point. They only address the liability of an *insurer* to the insured when the insured has failed to note some discrepancy between the policy as written and received and the policy requested or expected by the insured at the time the contract was entered into.

The analysis in the above cases focuses on the ability to enforce the contract as completed. The critical difference between insurer-insured cases and the case at bar is that in the former, one of the parties to the contract is attempting to deny the effectiveness of a part of the writing. A duty is imposed on the insured to read the contract and inform the insurer of any discrepancy so that a prompt correction may be made without prejudicing the rights of any party to the contract.

In contradistinction, a suit between the insured and his agent does not depend upon a modification of the terms of the written contract to the prejudice of the insurer. Rather, it involves only a matter of proof that the agent negligently performed his duty to procure a specified policy of insurance. In light of the agent's fiduciary duty to the insured and the fact that a written contract is not being altered to prejudice a party to that contract, the insured's failure to read the contract and point out errors in its basic terms, while arguably evidence of the insured's contributory negligence (but see *Shapiro v. Amalgamated Trust & Savings Bank* (1935), 283 Ill. App. 243; *Progress Laundry Co. v. Schweik* (1947), 332 Ill. App. 408, 75 N.E.2d 390; and *National Bank v. Brokerage Resources, Inc.* (1976), 42 Ill. App. 3d 940, 356 N.E.2d 988), is never contributory negligence as a matter of law.

The distinction between the liability of the insurer and of the insured's agent is discussed in *Shapiro v. Amalgamated Trust & Savings Bank* (1935), 283 Ill. App. 243, 246, where it was noted that, "[c]ases involving the liability of an insurance company which directly issues a policy to the insured are not in point. This is a case where plaintiffs are asking damages from their agent who failed to follow their instruction." The court went on to state that, "[i]n the instant case the defendant was the agent of the plaintiffs in procuring the insurance policy and it cannot avoid liability because of an alleged failure on the part of plaintiffs to ascertain whether the agent has faithfully performed the duty for which it was employed." (283 Ill. App. 243, 247.) To the same effect is the holding in *Progress Laundry Co. v. Schweik*. See Annot., 72 A.L.R.3d 747, 790-96 (1976).

A case factually similar is *Johnson v. Illini Mutual Insurance Company* (1958), 18 Ill. App. 2d 211, 151 N.E.2d 634. There it was alleged that plaintiff's insurance brokers misdescribed the premises to be insured. Suit was brought against the brokers and against the insurance company for reformation of the policy. The action against the insurer was abandoned but a default judgment against the brokers was affirmed, the court stating that the liability of a broker in such a case being well settled. It has been stated that the broker's liability may be based on negligence or in contract for failure to perform an agreement to procure proper insurance. *Prince v. Royal Indemnity Co.* (7th Cir. 1976), 541 F.2d 646; *Anfinsen Plastic Molding Co. v. Konen* (1979), 68 Ill. App. 3d 355, 386 N.E.2d 108.

*Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 370 N.E.2d 1271, cited by Glore, is not in point. In *Pittway*, the insured was suing its agent, but not for procuring a defective policy as in the present case. The agent in *Pittway* had obtained a policy covering property damage but the agent incorrectly advised its principal that losses caused by a defective component manufactured by one of the insureds subsidiaries were not "property damage" under the policy. On appeal it was determined that the losses could be claimed as property damage under the policy but that the insured was barred from recovery because it had failed to give prompt notice of the loss to the insurer.

In *Pittway* the court noted that the plaintiff's theory of liability would impose upon insurance brokers "* * * the duty to advise their customer of the import and meaning of the provisions of insurance policies which have previously been *faithfully procured* according to the customer's requirements. In the present instance, plaintiff's contention would also require the broker to advise plaintiff as to the future course of judicial precedent." (Emphasis added.) (56 Ill. App. 3d 338, 347, 370 N.E.2d 1271, 1277.) It would appear the Blacks' insurance policy for 631 N. 32d Street was not faithfully procured. Holding Glore responsible for inserting the correct address on the policy would be far different from requiring him to guess the course of precedent as to what losses would be covered by the policy. Thus, *Pittway* does not support the defendant's position.

■■ We conclude that Glore was not entitled to a judgment as a matter of law. The fact that the Blacks failed to read their policy does not as a matter of law establish their contributory negligence. Signing the application in blank is not contributory negligence as a matter of law if the Blacks' reliance on Glore was reasonable. While it is a close question whether plaintiff's motion for summary judgment against Glore should have been allowed, it does not appear that the issue of reliance, and other factual disputes, were resolved in the trial court. Because these are genuine issues of material fact which have yet to be resolved, summary judgment in favor of Glore must be reversed and the cause remanded for further proceedings consistent with the this opinion.

Affirmed in part; reversed in part; remanded.

SPOMER and KASSERMAN, JJ., concur.