AMAD OMAR, d/b/a Metro Gold Ltd., Plaintiff-Appellant, v. ST. PAUL FIRE & MARINE INSURANCE COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 86—3584

Opinion filed September 12, 1988.

DeBofsky & DeBofsky, of Chicago (Mark D. DeBofsky, of counsel), for appellant.

Horvath & Wigoda, of Chicago (John F. Horvath, of counsel), for appellee Williams Insurance Agency, Inc.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Timothy J. Reagan, Lisa Marco Kouba, and Richard R. Winter, of counsel), for appellee St. Paul Fire & Marine Insurance Company.

Rooks, Pitts & Poust, of Chicago (William M. Stevens, of counsel), for appellee Illinois R. B. Jones, Inc.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff brought an action against the defendants, two insurance brokers, an insurance agent, and an insurance company seeking recovery for an alleged theft from his jewelry store. The trial court granted motions for summary judgment in favor of the insurance company, the insurance agent and one of the insurance brokers and plaintiff appeals from these orders.[1]

The plaintiff Amad Omar (Omar) and John Cosenza owned a retail

---

[1]The action remains pending in the trial court as to one of the defendant insurance brokers, Claudia Coco.

jewelry store, Metro Gold, Ltd., in Hickory Hills, Illinois. In September 1983, Cosenza retained defendant Claudia Coco (Coco), an insurance broker, to obtain a specialized type of insurance known as jewelers block coverage for the jewelry store. Since Coco had never placed jewelers block coverage before, she contacted an insurance wholesaler, defendant Williams Insurance Agency (Williams), where she dealt with Hilbert Herman (Herman), a vice-president of the agency. Herman contacted defendant, Illinois R. B. Jones, Inc. (IRBJ), an insurance agency acting on behalf of several insurance companies in placing coverage. IRBJ sought to place the coverage with one of its clients, defendant St. Paul Fire & Marine Insurance Company (St. Paul). Coco's request for coverage was approved by St. Paul and a binder and insurance policy were issued through its agent, IRBJ, effective January 17, 1984. The policy was subsequently issued on February 8, 1984, retroactive to January 17, 1984, and ran for a one-year term. The policy did not contain a provision for the automatic renewal of coverage.

On November 26, 1984, Rose Faleni, an underwriter for IRBJ, sent to Herman a notice as to the fact that the Metro Gold policy would expire within two months along with an application to be completed by the insured prior to the expiration date. On November 30, 1984, Herman forwarded the new application to Coco for completion by the plaintiff. During the first week of December, 1984, Coco telephoned plaintiff and advised him that she had an insurance application for him that needed to be completed and signed. Plaintiff responded that his partner, John Cosenza, had left the business in September 1984 and plaintiff was unsure whether Metro Gold would remain in business. Coco cautioned plaintiff that if he chose to stay in business and elected to continue his coverage he would have to complete the application prior to the expiration date of the current policy. During the month of December 1984, Coco contacted plaintiff numerous times to inquire whether he had decided to remain in business and renew his insurance coverage. Plaintiff responded that he was unsure and, on one occasion, told Coco that he would perhaps make a decision after the holidays. Coco reminded plaintiff that the application must be completed and returned prior to January 17, 1985, or coverage would terminate. When plaintiff failed to return the application, coverage under the St. Paul policy lapsed on January 17, 1985.

On January 23, 1986, one week after the expiration of the St. Paul policy, Coco received plaintiff's signed application form, along with a $500 check made payable to Coco and dated January 18, 1985. Coco forwarded the application to Herman, who received it on Jan-

uary 25, 1985. Herman transmitted the application to IRBJ with a cover letter, dated January 25, 1985, requesting a quote for coverage. IRBJ advised Herman upon receipt of the application that the inventory percentages contained on the application did not total 100% and that this information would be required before submission of the application to St. Paul. IRBJ did not submit the policy application to St. Paul.

On January 31, 1985, plaintiff alleged that Metro Gold's safe was broken into and the contents removed. Plaintiff advised Coco of the loss the following day and on February 4, 1985, Coco notified Herman. At that time Herman advised Coco that there was no coverage for the loss. On March 27, 1985, St. Paul notified plaintiff that his claim would not be accepted since coverage had expired on January 17, 1985.

On April 26, 1985, plaintiff filed a complaint against Coco, Williams, IRBJ and St. Paul. Plaintiff alleged that an agreement to review the original policy had been obtained, that the coverage was in force at the time of the loss, and that the defendants wrongfully refused to honor plaintiff's claim. St. Paul, IRBJ and Williams filed motions for summary judgment. Hearing on the motions was continued for approximately one year to permit plaintiff to conduct discovery. On May 30, 1986, the trial court, after considering the extensive briefs of the parties and hearing lengthy argument, granted summary judgment to the defendants and plaintiff appeals from those orders.

At the outset, we note that all the appellees in the case at bar have filed motions to dismiss arguing that this court lacks jurisdiction to hear this appeal since plaintiff's notice of appeal was not timely filed. Appellees cite the decision of *Elg v. Whittington* (1987), 119 Ill. 2d 344, 518 N.E.2d 1232, where our supreme court held that the timely filing of a post-trial motion will not toll the running of a 30-day period for filing a timely notice of appeal based upon a Rule 304(a) (107 Ill. 2d R. 304(a)) finding that there was no just reason to delay enforcement or appeal. Further, the *Elg* court, in a modified opinion, specifically held that the interpretation of Rule 304(a) which it adopted would be applied only prospectively to those cases where the notice of appeal was filed or due to be filed on or after the date the decision was announced, November 16, 1987.

■ In the case at bar, at the time the trial court entered summary judgment in favor of defendants on June 2, 1986, pursuant to Rule 304(a), the court found that there was no just reason to delay enforcement or appeal. Thereafter, on June 27, 1986, plaintiff filed a post-trial motion to vacate the summary judgment orders which the

trial court denied on December 1, 1986. On December 23, 1986, the trial court denied the motion to vacate, and plaintiff filed his notice of appeal from that order on December 23, 1986. Under this chronology, because of the prospective application of *Elg*, its holding is inapplicable to the case before us, where the notice of appeal from the summary judgment orders would have been due on July 2, 1986, clearly prior to the November 16, 1987, date for enforcement of the *Elg* holding.

■■ ■ We first address the arguments raised by plaintiff on appeal concerning St. Paul and IRBJ. On appeal, plaintiff argues that his coverage under the original policy continued in effect where St. Paul failed to provide him with statutory notice of its intent not to renew. Plaintiff relies on section 143.17 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.17(a)), which provides:

"No company shall fail to renew any policy of insurance *** unless it shall send by mail to the named insured *** at least 30 days advance notice of its intention not to renew."

The legislative intent behind the notice statutes is to provide the insured with a reasonable opportunity to maintain continuous insurance coverage if he desires. (*Shore v. Coronet Insurance Co.* (1972), 7 Ill. App. 3d 782, 288 N.E.2d 887.) As provided by the statute, where an insurer unilaterally decides that it will not renew a policy, it must furnish appropriate notice to the insured in sufficient time for the insured to obtain coverage. In the case at bar, we find this statutory provision inapplicable since the record establishes that the insurer, St. Paul, manifested its intent to permit renewal and the insured, the plaintiff, caused the coverage to lapse. Plaintiff has not provided us with any evidence in the record to suggest that St. Paul intended not to renew or to cancel plaintiff's policy. Coco testified that St. Paul and IRBJ had not suggested that St. Paul would refuse to renew plaintiff's coverage. Moreover, St. Paul affirmatively indicated its willingness to renew coverage in the letter dated November 26, 1984, if plaintiff returned the application enclosed therewith or requested a binder prior to the expiration of the original policy.

In *Shiaras v. Chupp* (1974), 18 Ill. App. 3d 722, 310 N.E.2d 481, *aff'd* (1975), 61 Ill. 2d 164, 334 N.E.2d 129, this court held that the statute which requires an insurer to notify its insured of the cancellation of a policy because of nonpayment of premium does not apply to a case where the insurer refuses to renew an existing policy at the end of its terms. Accordingly, where the insurer sent notice to the insured advising the insured of the date on which the renewal premium was due and where the insured did not pay the premium, the policy

would lapse. Similarly, in the case at bar, St. Paul did not take any action to cancel plaintiff's policy before the end of the policy period. The record reveals that the notices sent by St. Paul, via its agent, IRBJ, to plaintiff were not cancellation notices but lapse notices. The parties do not dispute that plaintiff was aware of the contents of the notices. The notices served to remind plaintiff that if he did not remit promptly, the insurance policy would automatically expire at the end of the term. Therefore, the statute on which plaintiff relies has no application here since plaintiff, and not St. Paul, elected not to renew coverage. See also *Hunter v. West American Insurance Co.* (1981), 95 Ill. App. 3d 108, 419 N.E.2d 719.

■ Although one week after expiration of the original policy plaintiff forwarded an application for insurance coverage to Coco, the law is well settled that an application for insurance is a mere offer and it creates no rights and imposes no duty on the insurer. (*Reynolds v. Guarantee Reserve Life Insurance Co.* (1976), 44 Ill. App. 3d 764, 358 N.E.2d 940; *Wallace v. The Prudential Insurance Co. of America* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344.) An application for insurance is not itself a contract but is a mere proposal which requires acceptance by the insurer to give it effect as a contract. (*Palmer v. Bull Dog Auto Insurance Association* (1920), 294 Ill. 287, 128 N.E.2d 499.) It is undisputed by the parties here that plaintiff's second application for insurance coverage was never accepted by St. Paul.

■ Plaintiff argues that the affidavit of Yale Lauter, a friend of plaintiff, which stated that Celso Chan, a St. Paul underwriter, advised him by telephone that plaintiff's policy was in effect and the loss was covered creates a material issue of fact. From our review of the affidavit, it does not create a material issue of fact since the affidavit is devoid of facts that indicate that Chan had any authority to make the purported statement of coverage for the loss where he had no direct supervision or control over the Metro Gold claim. *Devers v. Prudential Property & Casualty Insurance Co.* (1980), 86 Ill. App. 3d 542, 408 N.E.2d 462.

■ ■ Plaintiff further argues that as an agent, IRBJ's actions bound St. Paul. Plaintiff contends that when his renewal application was submitted to IRBJ by Herman, IRBJ could have issued and had a practice of issuing binders while awaiting approval of the application. Accordingly, an issue of fact was raised as to whether insurance coverage existed. We find this argument without merit since the undisputed facts in the record establish that IRBJ had no authority to accept or issue coverage on a jewelers block policy without express authority from St. Paul and IRBJ had not been instructed by plain-

tiff's representatives to bind coverage. Rose Faleni, the underwriter for IRBJ, stated in her affidavit and deposition testimony that on January 17, 1985, Herman told her to drop the coverage upon expiration of the existing policy on January 17, 1985, and that he stated in his January 25, 1985, memorandum and confirmed in a January 29, 1985, telephone call that he was only requesting a quote on the cost of a new policy and that no binder was to be obtained. In order to defeat a motion for summary judgment, the purported factual issues in dispute must be material to the essential elements of the cause of action or the defense thereto. (*Guyton v. Roundy* (1985), 132 Ill. App. 3d 573, 477 N.E.2d 1266.) In our judgment, plaintiff's arguments in the case at bar do not create a material issue of fact as to whether St. Paul and IRBJ are liable for plaintiff's insurance claim since there is no dispute as to the facts surrounding plaintiff's failure to procure coverage from these defendants. Accordingly, the trial court properly granted the motion of defendants St. Paul and IRBJ for summary judgment. *Carnevale v. Inland Ryerson Building Systems* (1988), 169 Ill. App. 3d 740.

■ We next consider plaintiff's arguments concerning Williams. Plaintiff argues that Williams, as plaintiff's broker, breached a contract to procure insurance for plaintiff and was negligent. A broker acts as the agent for the insured and is obligated to act in good faith and with reasonable care, skill and diligence in transacting business for the insured. (*Lazzara v. Howard A. Esser, Inc.* (7th Cir. 1986), 802 F.2d 260.) If a broker represents to an insured that insurance is in effect, the agent has a duty to procure the requested coverage. (*Wheaton National Bank v. Dudek* (1978), 59 Ill. App. 3d 970, 376 N.E.2d 633.) The failure to obtain coverage, either due to breach of a contract to procure insurance or by reason of any omission or commission renders the broker liable for any loss the principal may sustain. *Pugh v. Bershad* (1971), 133 Ill. App. 2d 174, 272 N.E.2d 745.

■ In the case at bar, plaintiff, through Coco, contacted Williams to procure an insurance binder. A review of the deposition testimony of Williams' vice-president, Herman, reveals that his statements were inconsistent as to whether he led plaintiff to believe, through Coco, that plaintiff would be covered as soon as the insurance application was received by Williams. We believe, therefore, that a question of fact exists as to whether Williams assumed the duties of a broker and owed plaintiff a duty to provide him with the desired coverage or to notify plaintiff of the rejection of the risk. (*Wheaton National Bank v. Dudek* (1978), 59 Ill. App. 3d 970, 376 N.E.2d 633.) We also believe that a genuine issue of fact surrounds this transaction with respect to

whether there was a contract to procure insurance. We, therefore, hold that it was error for the trial court to grant Williams' motion for summary judgment and that plaintiff is entitled to have his action against Williams presented to the trier of fact. *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 883 N.E.2d 210; *National Boulevard Bank v. Georgetown Life Insurance Co.* (1984), 129 Ill. App. 3d 73, 472 N.E.2d 80.

For the reasons stated, we affirm the grant of summary judgment entered in favor of defendants St. Paul and IRBJ and reverse the entry of summary judgment entered in favor of defendant Williams.

Affirmed in part; reversed in part and remanded for further proceedings.

BUCKLEY and MANNING, JJ., concur.