**In re John DORSEY, Debtor.**

**Wayne CASEY and Louise Casey, Plaintiffs,**

v.

**TRANSPORT LIFE INSURANCE COMPANY, Keith Wood Agency, Inc., and John Dorsey, Defendants.**

**Bankruptcy No. 92 B 20299.**
**Adv. No. 92 A 01694.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 3, 1993.

Opinion Denying Reconsideration Dec. 9, 1993.

**152**

Alexander S. Knopfler, Chicago, IL, Trustee.

M. Scott Michel, Chicago, IL, U.S. Trustee.

Norman H. Lehrer, Lehrer, Flaherty & Canavan, P.C., Wheaton, IL, for Wayne Casey and Louise Casey, debtors/plaintiffs.

Michael A. Klysh, Michael A. Klysh, P.C., Chicago, IL, for John Dorsey, defendant.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint of Wayne Casey and Louise Casey (the "Caseys") for a determination of the

dischargeability of a certain debt owed to them by debtor/defendant, John Dorsey ("Dorsey") alleged to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). For the reasons set forth herein, having considered the pleadings and the testimony of the parties, the Court finds and concludes that the debt is non-dischargeable and enters judgment in favor of the Caseys against Dorsey.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

Some of the background and facts are contained in an earlier Opinion of the Court. See Casey v. Transport Life Ins. Co., 1993 WL 340928, 1993 LEXIS 1250 (Bankr. N.D.Ill. Aug. 19, 1993). Dorsey was formerly employed as an insurance agent by Keith Wood Agency, Inc., and incidental to his employment, sold certain health insurance to the Caseys. He met with the Caseys in April, 1990 to propose a health insurance plan for them and their children. Wayne Casey explained to Dorsey that they were looking for less expensive health insurance with comparable coverage because of a substantial increase in premiums by the carrier writing their current policy. Both Caseys testified that Dorsey was furnished their existing policy to review. After he reviewed same, he represented that he had a policy to offer with better coverage and benefits, though it would not save them much on premiums. Wayne Casey noticed a reference on the back page of the materials he was furnished by Dorsey, concerning what Casey described as a $10,000.00 "exclusion." Advising Dorsey that he was concerned with this (as the current policy had only a $500.00 deductible), and did not want a large exclusion or deductible, both Caseys testified that Dorsey stated they should not worry. Under Dorsey's proposal they were getting a major medical policy with a $10,000.00 "exclusion" which would be covered by a supplement as part of the program. Mrs. Casey was unaware of the reference to the exclusion in either the enrollment form application or the policy that was ultimately issued.

The principal concern of Mrs. Casey was the adequacy of coverage because the couple had four children. According to her testimony, Dorsey stated that the plan he proposed would give comparable coverage to what they had, plus additional benefits at reduced rates. She corroborated her husband's testimony that the "supplement" would cover the $10,000.00 "exclusion" or gap in benefits in the main policy Dorsey was proposing. Dorsey also represented there would be no problem covering her pre-existing medical conditions. Based on Dorsey's representations they agreed to buy the policies and subsequently let their existing policy lapse. The Caseys gave Dorsey two checks which were cashed for the initial premiums.

Several weeks later after the policies were received, Mrs. Casey reviewed same, and was surprised to note that they contained exceptions for her pre-existing medical conditions. This resulted in a subsequent phone call between the Caseys and Dorsey. According to the Caseys, Dorsey stated that the underwriting department of the carrier had tightened underwriting requirements and standards, which resulted in the exceptions for her pre-existing conditions. He proposed to meet with them to discuss writing another policy with another company. When Dorsey did not appear, their subsequent calls to Keith Wood Agency, Inc. revealed that Dorsey was no longer employed with the agency. Later that summer, one of the Caseys' sons was hospitalized for emergency surgery. The policy purchased through Dorsey only paid approximately $4,000.00 of that bill, and the Caseys were compelled to personally pay the $10,000.00 portion of the bill not covered under the policy.

Dorsey testified that he has been in the business of selling health insurance programs for over ten years. He previously owned his own insurance agency. He stated that he proposed to the Caseys a major medical policy with ample coverage, but which had a benefit commencement point below which the Caseys would be self-insured for the first

$10,000.00 of their covered medical expenses. The policy terms, which Dorsey said he explained when he made the sale to the Caseys, provided full coverage after the applicable commencement point. Dorsey testified he explained the supplemental benefits to them and admitted taking their checks. He disputed ever speaking with them again after taking their applications for the policy with the supplemental benefits. Although Dorsey admitted he was authorized by the insurance carrier to take applications, he stated he did not have a copy of the policy with him because, as he testified, he was not allowed to carry a specimen policy to show prospective customers. Dorsey also denied being aware that such customers relied on his representations. He further denied ever stating the coverage afforded the Caseys under the subject policy sold was as good as, or better than that which they had under their existing health insurance program.

Prior to this matter, the Caseys sued Dorsey and others in the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois, and obtained a default judgment against Dorsey for $12,000.00 plus costs. That judgment was subsequently amended to include an additional award of $10,000.00 for punitive damages. Thereafter, Dorsey filed under Chapter 7 of the Bankruptcy Code, and has since received his discharge.

### III. APPLICABLE STANDARD

#### A. The Standard for Dischargeability in the Seventh Circuit

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983). The United States Supreme Court has held that the burden of proof required for establishing an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). To further the policy of providing the debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985).

#### B. 11 U.S.C. § 523(a)(6)

Section 523 of the Bankruptcy Code enumerates specific exceptions to the dischargeability of debts. The Caseys allege that Dorsey's judgment debt arises from willful and malicious conduct, and as such is non-dischargeable pursuant to the specific exception found in section 523(a)(6). It provides as follows:

(a) A discharge ... under this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury caused by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

In order for a debt to be held non-dischargeable under section 523(a)(6), the creditor has the burden of proving that the injury resulted from an act that was both willful and malicious. *Dornik v. Maurice*, 138 B.R. 890, 896 (Bankr.N.D.Ill.1992), *aff'd*, No. 92 C 4043, 1992 WL 308535, slip op. (N.D.Ill. Oct. 19, 1992), *quoting In re Kimzey*, 761 F.2d 421, 424 (7th Cir.1985); *United Bank of Southgate v. Nelson*, 35 B.R. 766, 768 (N.D.Ill.1983); *Taradash v. Pokorny*, 143 B.R. 179, 182 (Bankr.N.D.Ill.1992); *In re Dvorak*, 118 B.R. 619, 627 (Bankr.N.D.Ill. 1990); *In re Hopkins*, 82 B.R. 952, 953 (Bankr.N.D.Ill.1988). The term "willful" means "deliberate or intentional," and "malicious" means "wrongful and without just cause or excuse even in the absence of personal hatred, spite or ill will." *In re Condict*, 71 B.R. 485, 487 (N.D.Ill.1987); *In re Meyer*, 7 B.R. 932, 933 (Bankr.N.D.Ill.1981).

Courts have consistently used this definition of willful. *See e.g., In re Scarlata*, 979 F.2d 521, 527 (7th Cir.1992); *In re McGuffey*, 145 B.R. 582, 585–586 (Bankr. N.D.Ill.1992); *In re Iaquinta*, 98 B.R. 919, 924 (Bankr.N.D.Ill.1989). The Seventh Circuit has not yet defined the term "malicious" for purposes of section 523(a)(6). This Court, however, adheres to the liberal definition of "malicious" which includes implied or constructive malice as well as actual malice. *See McGuffey*, 145 B.R. at 585–587. The debtor need not act with ill will or malevolent purpose towards the injured party. *In re*

*Hallahan,* 78 B.R. 547, 550 (Bankr.C.D.Ill. 1987), *aff'd,* 113 B.R. 975 (C.D.Ill.1990), *aff'd,* 936 F.2d 1496 (7th Cir.1991). Thus, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. Moreover, the Seventh Circuit has stated that to except a debt from discharge under section 523(a)(6), the creditor must show that the debtor knew his acts would automatically or necessarily cause the creditor's injury. *Scarlata,* 979 F.2d at 526. Following decisions of other judges, this Judge has previously held that punitive damage awards are not dischargeable under section 523(a)(6). *See Katahn Assocs., Inc. v. Wien,* 155 B.R. 479 (Bankr.N.D.Ill.1993).

## IV. *DISCUSSION*

██ After having considered the testimony of the Caseys and Dorsey, the Court finds that the Caseys' testimony is credible, corroborated, and consistent. Dorsey's testimony, in contrast, included some statements which are patently incredible. Although Dorsey admitted he was authorized to solicit sales for the insurance carrier, the Court finds it incredible that he was not authorized to furnish a specimen policy to prospective customers. In addition, the Court finds incredible Dorsey's testimony denying knowledge that prospective customers would rely on his representations regarding that which he was attempting to sell them.

The Court finds and concludes that Dorsey intentionally misrepresented the extent and scope of the coverage of the policy and the supplement he sold to the Caseys in April, 1990. The Caseys paid their initial premiums that day in reasonable reliance on his representations that the coverage under the policy to be issued would be comparable to, and even better than that which they had, at slightly lesser monthly premiums. Dorsey's explanation of the scope of coverage was at substantial odds with the Caseys' recollection of his presentation. That for which the Caseys paid a separate premium was understood by them to cover the $10,000.00 gap. Both Caseys convincingly testified that they would not have purchased the subject policy had they known they would have to pay the

first $10,000.00 of medical expenses not covered by the policy or supplement. The policy issued did not provide coverage or pay that amount, which was to their detriment when their son was hospitalized several months later.

██ The Court notes that there is no statutory prohibition on the Caseys utilizing section 523(a)(6), rather than section 523(a)(2)(A), where a fraud based tort is the gravamen of the conduct producing willful and malicious injury. The Court respectfully disagrees with *In re Price,* 123 B.R. 42 (Bankr.N.D.Ill.1991). *Price* stated that actions for willful and malicious injury are those brought to protect a person and his property from intentional and unpermitted contacts, such as assault and battery. *Id.* at 45. Actions for fraud, according to *Price,* are those brought to protect the intangible economic interests of those who are induced by mistake to enter into transactions as a consequence of the fraud or misrepresentation. *Id. Price* further noted that each section 523(a) action is exclusive of the other. *Id.* In construing these subsections narrowly, the court stated, without citing to any authority, that willful and malicious injury does not include fraud. *Id.* One leading authority correctly focuses on the willful and malicious injury committed by the debtor which can encompass a broad variety of intentional torts, not just traditional intentional torts such as assault, battery, and the like. R. Ginsberg and R. Martin, 1 *Bankruptcy: Text, Statutes, Rules,* § 11.06[i] at 11–114–115 n. 492 and 493 (3d ed. 1992) (collecting cases).

Although fraud in dischargeability determinations is usually pleaded and tried under the elements of section 523(a)(2), the Caseys have only invoked section 523(a)(6). The Court finds that there is nothing in the text of section 523(a)(6) which precludes its proper invocation by an aggrieved party whose claim for willful and malicious injury sounds in fraud. The critical focus for relief under section 523(a)(6) for an aggrieved creditor is the conduct committed by the debtor, if found willful and malicious under the facts, whether or not such conduct might also fit within one or more of the other exceptions to

discharge under section 523(a). There is no provision in the statutory text of section 523(a) which effectively allows a creditor to invoke only one of the various exceptions to discharge to the exclusion of all others, as *Price* implies.

Dorsey's misrepresentation concerning the policy coverage is somewhat analogous to an employer's willful and malicious failure to provide workers with compensation insurance coverage found non-dischargeable under section 523(a)(6). *See In re Strauss*, 86 B.R. 559 (Bankr.N.D.Ill.1988), *aff'd*, 99 B.R. 396 (N.D.Ill.1989). Although *Strauss* concerned an employer's willful failure to obtain worker's compensation insurance statutorily required, unlike the hospital and medical insurance coverage involved in this case, there are similarities with regard to the applicability of section 523(a)(6). Like *Strauss,* which held a knowing and intentional failure to provide insurance is "willful" for section 523(a)(6) purposes, this Court finds Dorsey's actions to be willful in misrepresenting that the coverage he could provide the Caseys was comparable in scope and benefits to that which they currently enjoyed, when in fact it was not. After all, Dorsey was an experienced insurance salesman and agent, unlike the Caseys (a certified public accountant and registered nurse, respectively), unexperienced in the complexities of health insurance coverage. Dorsey reviewed their existing policy and had a pecuniary interest in the sale to the Caseys because he was selling on commission. He supplied false information to the Caseys in their search for comparable, but less expensive health insurance coverage for themselves and their family.

■ "Malice," which the Court finds present here, can be established either by an intention to injure or, as in this case, intentional conduct which was certain, or almost certain, to cause financial injury to the Caseys. At the very least, Dorsey's misrepresentations concerning the scope of the policy coverage were made when he knew of the likely prospect that the Caseys would be injured financially when they had to pay the first $10,000.00 of medical expenses incurred by a member of their family. For bankruptcy dischargeability determination under sec-

tion 523(a)(6) it is not required that Dorsey had any specific intent to injure the Caseys, merely that he had intent to perform the act of misrepresenting the coverage in the policy he sold them. *See In re Guy*, 101 B.R. 961, 982 (Bankr.N.D.Ind.1988). The Court concludes that Dorsey's actions were "malicious" because he possessed knowledge at the time of his misrepresentations to the Caseys that if a medical or hospital claim were to arise, the Caseys would bear the first $10,000.00 of the medical expenses, in contrast to receiving comparable benefits which they had previously enjoyed under their existing policy, pursuant to which they only had to bear the cost of a $500.00 deductible.

■ In addition, under Illinois law, Dorsey had a duty not to commit misrepresentation with regard to the scope and extent of coverage in the policy he sold to the Caseys. For a statement of a person to constitute the intentional tort of misrepresentation, it must be: (1) of a material nature; (2) untrue; (3) known by the person making it to be untrue, believed by him to be untrue, or made in culpable ignorance of its truth or falsity; (4) relied upon by the victim to his detriment; (5) made for the purpose of inducing the reliance; and (6) such that the victim's reliance led to his injury. *Cullen Distributing, Inc. v. Petty*, 164 Ill.App.3d 313, 320, 115 Ill.Dec. 322, 327, 517 N.E.2d 733, 738 (4th Dist.1987), *quoting Oltmer v. Zamora*, 94 Ill.App.3d 651, 653, 49 Ill.Dec. 652, 654, 418 N.E.2d 506, 508 (4th Dist.1981). The Court finds that all elements are present in this matter. For his misrepresentation, Dorsey is liable for the Caseys' pecuniary loss caused by their justifiable reliance on the misinformation he provided them. Specifically, he failed to exercise reasonable care and competence in communicating to the Caseys the coverage they actually purchased. Further, the Restatement Second Torts § 529 notes that a representation stating the truth as far as it goes, but which the maker knows or believes to be materially misleading because of the failure to state additional qualifying matter, is a fraudulent misrepresentation. *See e.g., Oltmer*, 94 Ill.App.3d at 653–654, 49 Ill.Dec. at 654, 418 N.E.2d at 508. In the absence of information that would cause the

Caseys, as reasonable persons, to inquire further, they were entitled to rely on Dorsey's factual representations to them relative to the scope of coverage of the policy and supplement. *See generally, Brinks, Inc. v. American Dist. Tel. Co.*, 413 F.2d 359 (7th Cir.1969). The state court judgment liquidating the claimed damages is entitled to full faith and credit. *See* 28 U.S.C. § 1738.

■ The Caseys argue that under Illinois law, Dorsey was a fiduciary, and "the relationship between an insured and his broker, acting as the insured's agent, is a fiduciary relationship notwithstanding the fact that the broker may be compensated by some third party." *Black v. Illinois Fair Plan Asso.*, 87 Ill App.3d 1106, 1110, 42 Ill.Dec. 934, 937, 409 N.E.2d 549, 552 (5th Dist.1980); *see also Lake County Grading Co. v. Great Lakes Agency, Inc.*, 226 Ill. App.3d 697, 702, 168 Ill.Dec. 728, 732, 589 N.E.2d 1128, 1132 (2d Dist.1992); *American Environmental, Inc. v. 3–J Co.*, 222 Ill. App.3d 242, 249, 164 Ill.Dec. 733, 739, 583 N.E.2d 649, 655 (2d Dist.1991). A broker acts as the agent for the insured and is obligated to act in good faith and with reasonable care, skill and diligence in transacting business for the insured. *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 266 (7th Cir.1986); *Omar v. St. Paul Fire & Marine Ins. Co.*, 175 Ill.App.3d 77, 84, 124 Ill.Dec. 705, 709, 529 N.E.2d 686, 690 (1st Dist.1988). The Caseys also contend that even if they may have been negligent in failing to read the insurance policy, or note that the policy did not provide full coverage, this negligence would not absolve Dorsey of liability. *Black*, 87 Ill.App.3d at 1111, 42 Ill.Dec. at 938, 409 N.E.2d at 553; *Prince v. Royal Indem. Co.*, 541 F.2d 646 (7th Cir. 1976), *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977). Under Illinois law, it is also true that misrepresentations by an insurance agent made in connection with an insured's need and desire to purchase additional insurance are subject to the provisions of the Illinois Consumer Fraud and Deceptive Business Practices Act. *See Lang v. Consumers Ins. Service, Inc.*, 222 Ill. App.3d 226, 238–239, 164 Ill.Dec. 825, 583 N.E.2d 1147, 1156 (2d Dist.1991).

Dorsey argues that he was not an agent of or a broker for the Caseys. Rather, he claims that he was the employee of the Keith Wood Agency, Inc. and therefore an agent of his employer, owing the Caseys no such duties as a broker. Dorsey thus contends that the Caseys' cited authorities are applicable to insurance brokers (which he was not), not insurance agents. This distinction, according to Dorsey, is important because the duty owed to the insureds is distinctive, depending on whether Dorsey is characterized as an agent of the Keith Wood Agency, Inc. or as a broker or an agent for the Caseys. Dorsey cites the *Lazzara* case which contains the criteria for determining whether an individual is a broker or an agent. Dorsey maintains that this determination will govern to whom he may owe a duty. *See Zannini v. Reliance Ins. Co.*, 147 Ill.2d 437, 168 Ill.Dec. 820, 590 N.E.2d 457 (1992).

■ The Court need not make this determination because regardless of whether Dorsey is an agent or a broker, he had a statutory duty not to misrepresent the terms of the policy he sold to the Caseys and the attendant coverage. Under the Illinois Insurance Code, 215 ILCS 5/1 *et seq.*, misrepresentation by both agents and brokers is specifically prohibited. That statute provides in relevant part:

(1) *No* company doing business in this State and no officer, director, *agent*, clerk or employee thereof, *broker*, or any other person, *shall make*, issue or circulate or cause or knowingly permit to be made, issued or circulated *any* estimate, illustration, circular, or *verbal* or written *statement of any sort misrepresenting the terms of any policy* issued or *to be issued* by it or any other company *or the benefits or advantages promised thereby* or any misleading estimate of the dividends or share of the surplus to be received thereon.... (emphasis added).

(2) *No* such company or officer, director, *agent*, clerk or employee thereof, *or broker shall make any misleading representation or comparison of* companies or *policies, to any person insured in any company for the purpose of inducing or tending to induce a policyholder in any company to*

lapse, forfeit, *change* or surrender *his insurance*, whether on a temporary or permanent plan. (emphasis added)

215 ILCS 5/149(1) and (2). The statute has been held not to create a private right of action for its violations. *Elrad v. United Life & Acci. Ins. Co.*, 624 F.Supp. 742, 744 (N.D.Ill.1985). This does not mean, however, the Caseys lack a remedy for Dorsey's willful misrepresentations. *See e.g., Barr Co. v. Safeco Ins. Co. of America*, 583 F.Supp. 248 (N.D.Ill.1984), *recons. granted, in part, recons. denied, in part*, 706 F.Supp. 616 (N.D.Ill.1989); *Sommer v. United Sav. Life Ins. Co.*, 128 Ill.App.3d 808, 84 Ill.Dec. 77, 471 N.E.2d 606 (2d Dist.1984). Failure to obtain known and desired coverage requested has been held actionable in Illinois. *National Boulevard Bank v. Brokerage Resources, Inc.*, 42 Ill.App.3d 940, 943, 1 Ill.Dec. 706, 708, 356 N.E.2d 988, 990 (1st Dist.1976).

Even though a private cause of action does not exist under this statute, it clearly prohibits misrepresentation by, among others, both brokers and agents. The statute makes no exceptions for someone who is acting solely as an agent for an insurance carrier. It covers all agents and brokers without exception, and thus imposes the duty not to misrepresent policy coverage and terms.

### V. CONCLUSION

For the foregoing reasons, the Court holds the judgment debt against Dorsey nondischargeable pursuant to section 523(a)(6).

This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### MEMORANDUM OPINION ON RECONSIDERATION

This matter comes before the Court on the motion of John Dorsey ("Dorsey") pursuant to Federal Rule of Civil Procedure 59(e) and Federal Rule of Bankruptcy Procedures 9023 requesting the Court to reconsider and alter its judgment order dated November 3, 1993. For the reasons set forth herein, the Court denies the motion.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II. FACTS AND BACKGROUND

All of the facts and background are contained in earlier Opinions of the Court. *See Casey v. Dorsey*, 1993 WL 340928 (Bankr. N.D.Ill. Aug. 19, 1993); *Casey v. Dorsey*, 1993 WL 477352 (Bankr.N.D.Ill. Nov. 3, 1993). Therein the Court held the debt owed to the Caseys by Dorsey was non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

### III. APPLICABLE STANDARDS

The Seventh Circuit Court of Appeals has instructed courts to treat all substantive post-judgment motions, regardless of their captions, if filed within ten days of judgment, under Rule 59. *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir.1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin*, 957 F.2d 515, 517 (7th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 91, 121 L.Ed.2d 53 (1992); *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). Dorsey's motion was served out on November 12, 1993, within ten days of the entry of the judgment on November 3, 1993. Thus, the motion is timely under the applicable standards and authorities construing Rules 59 and 9023.

Motions made under Rule 59 serve to correct manifest errors of law or fact, or to consider the import of newly discovered evidence. *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557 (7th Cir.1985); *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656 (N.D.Ill.1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984); *F/H Industries, Inc. v. National Union Fire Ins. Co.*, 116 F.R.D. 224, 226 (N.D.Ill.1987). The function of a motion made pursuant to Rule 59(e) is not to serve as a vehicle to re-litigate old matters or

present the case under a new legal theory. *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986); *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 244 (N.D.Ill. 1976); *In re BNT Terminals, Inc.,* 125 B.R. 963, 976–977 (Bankr.N.D.Ill.1990). The purpose of a motion to alter or amend "is not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *BNT Terminals,* 125 B.R. at 977. "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Id.*

## IV. *DISCUSSION*

Dorsey's motion does not allege that the Court in its last Opinion and Order committed any manifest error of fact, nor does Dorsey proffer any newly discovered evidence not available at the time of trial. Rather, the motion contends the Court made various errors of law.

■■■ Dorsey first contends that the Caseys' complaint alleging that the debt arose from willful and malicious fraud did not state a proper cause of action under section 523(a)(6). Although a willful and malicious failure to provide promised insurance coverage is not among the more common of the wide variety of tort based causes of action asserted under section 523(a)(6), that cause of action is not precluded from fitting within the confines of the statutory text of this section and is not without precedent. *In re Strauss,* 86 B.R. 559 (Bankr.N.D.Ill.1988), *aff'd,* 99 B.R. 396 (N.D.Ill.1989) held that willful and malicious failure to provide workers with statutorily required worker's compensation insurance coverage was a non-dischargeable debt under section 523(a)(6). The Court merely extended the *Strauss* reasoning by analogy to the facts at bar.

Dorsey also alleges that the misrepresentation complained of was not previously raised in the pleadings. The Court rejects this argument as paragraph three of Dorsey's motion aptly notes that the original complaint invoking section 523(a)(6) refer-

enced the "willful and malicious fraud by the debtors." [sic] Dorsey's argument thus fails because there was no surprise relative to the operative conduct of which the Caseys complained. Dorsey was given adequate opportunity to conduct any and all necessary pre-trial discovery of the underlying facts supporting the cause of action alleged by the Caseys.

Dorsey principally argues that the Court erroneously failed to follow *In re Price,* 123 B.R. 42 (Bankr.N.D.Ill.1991). In dictum, *Price* stated that section 523(a)(6) does not encompass fraud based causes of action covered under section 523(a)(2). On this point, it was the Court that first cited *Price* and respectfully declined to follow that view which is not controlling authority or persuasive to this Judge. Dorsey further argues that by not following the narrower *Price* interpretation of section 523(a)(6), the Court effectively allowed the Caseys to recover on a virtual amended cause of action under either sections 523(a)(2) or 523(a)(4). The Court rejects this contention as the Caseys have not sought to amend the theory of their cause of action. The Caseys could have sought leave to file an amended complaint under Federal Rule of Civil Procedure 15(b) and (c)(2), incorporated by Federal Rule of Bankruptcy Procedure 7015, even after the close of the evidence, as long as their claim arose out of the same conduct and transaction set forth in the original complaint pleaded under section 523(a)(6). The matter, however, was tried and decided only under section 523(a)(6) and the case law construing same. None of the authorities cited in the Opinion were based upon the text of either sections 523(a)(2) or 523(a)(4), or any decisional law applying those sections. Rather, the Court found the evidence adduced at trial fit all the requisite elements for relief under section 523(a)(6), and that the Caseys had proven their cause of action by a preponderance of the evidence.

■■■ Dorsey also complains that the Court's reference to the treatise authored by Judges Ginsberg and Martin was insufficient in light of the *Price* holding. That treatise, however, referred to a whole host of cases on the point that there is a wide variety of torts

**160**

which fall within the willful and malicious injury proscribed by section 523(a)(6). The section 523(a)(6) exception to discharge encompasses a larger range of state-based torts, rather than the more narrowly focused exceptions of sections 523(a)(2)(A) and 523(a)(2)(B) based exclusively on fraud, and section 523(a)(4) limited to fraud or defalcation of fiduciaries, embezzlement or larceny.

■ Dorsey next argues that there was no evidence of a specific intent by him to commit the resultant financial injury to the Caseys when they were compelled to bear the first $10,000.00 of medical expenses they thought would be covered under the policy he sold them. Dorsey's arguments on this point are unavailing because his actions were knowing and intentional, and hence "willful" for purposes of section 523(a)(6). Dorsey possessed knowledge at the time of his misrepresentation to the Caseys that they, rather than the insurance carrier, would have to bear the uncovered expenses, in contrast to the existing benefits they enjoyed under their current policy which contained only a $500.00 deductible. Thus, Dorsey's misrepresentations were "malicious" under the *Strauss* analysis. There is no requirement in this district and circuit that a debtor-defendant have specific intent to injure a creditor-plaintiff for purposes of section 523(a)(6) as indicated in the cases cited in the Court's Opinion. None of that case law has been distinguished or shown to have been overruled or otherwise arguably inapplicable to the facts of this matter.

### V. *CONCLUSION*

For the foregoing reasons, the Court hereby denies Dorsey's motion to reconsider or alter the judgment entered by this Court on November 3, 1993.

This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.